THE CITIZENS BANK OF WESTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 57525. Filed June 26, 1957.

*Robert A. Littleton, Esq.*, for the petitioner.
*James A. Scott, Esq.*, for the respondent.

**OPINION.**

Rice, *Judge:* The petitioner bases its claim for a deductible loss on the ground that the utility of its basement was completely destroyed by the flood which occurred in 1950 because "it is no longer safe or advisable to use the basement as a banking facility until the flood waters of West Fork River are controlled by a high dam and/or a series of small dams" since another flood may occur at any time. It recognizes that no physical damage, as such, occurred to the building, but contends that its fair market value immediately after the flood was considerably less than its value immediately before the flood.

The respondent contends that the petitioner sustained no loss as a result of the flood of 1950 because there was no physical damage to its building, and that, even assuming its fair market value was less after the flood, there was still no resulting loss, recognizable for tax purposes.

In *Williams Furniture Corporation,* 45 B. T. A. 928 (1941), we permitted the taxpayer to deduct the loss occasioned by its abandonment of certain tank foundations which were rendered useless because of a fire which destroyed its manufacturing plant and necessitated moving its operations to another location. We said, at page 938:

As early as the Revenue Act of 1918 and continuing through all the subsequent revenue acts, the Commissioner in his appropriate regulations has allowed a

deduction for "loss of useful value" of capital assets, when through some change in business conditions the usefulness in the business of a capital asset is suddenly terminated so that the taxpayer discards it permanently from use in the business. This was intended as an exception to the rule requiring a sale or other disposition of property in order to establish a loss, and was made applicable to buildings "only when they are permanently abandoned or permanently devoted to a radically different use." * * *

Regulations 111, section 29.23 (e)–3, which is applicable here, permits a similar deduction. Since losses sustained by a corporation are deductible under the general provisions of section 23 (f), we think it matters not whether the loss arises directly from the physical destruction of property by a casualty or from the abandonment of property caused by the occurrence of a casualty, so long as a taxpayer can show that he has actually sustained a loss.

The petitioner here has failed to show that it sustained a deductible loss. We agree with the respondent that physical damage or destruction of property is an inherent prerequisite in showing a casualty loss. The petitioner concedes that there was no physical damage to its property which resulted in a loss, and it has not shown a permanent abandonment of its property occasioned by the flood. It has continued to use the main and mezzanine floors for banking purposes just as it did prior to the flood, and, in any event, petitioner has failed to show that it *permanently* abandoned even the basement of the building. Mere non-use is not enough to give rise to a recognized abandonment loss for tax purposes. *Mid-State Products Co.*, 21 T. C. 696 (1954); *W. B. Davis & Son, Inc.*, 5 T. C. 1195 (1945). Petitioner concedes that if an adequate flood control program for the West Fork River were adopted, its basement would be fully as usable as before.

It seems to us that the essence of petitioner's position here is that it is attempting to claim a loss because of the fluctuation in the value of its banking property. It sustained no loss because of casualty damage or destruction of its property; and it did not permanently abandon its property because of the casualty. Petitioner here has simply discontinued the use of its basement for storage of its records. It has done so even though the physical condition of the basement is admittedly the same as before the flood, and just as desirable for the storage of its records, except for the fear that another flood may some day occur. But the law does not permit current deductions for losses which may be sustained in the future any more than it permits deductions for losses claimed because of mere fluctuation in the value of the property. *United States* v. *White Dental Co.*, 274 U. S. 398 (1927); *Burdan* v. *Commissioner*, 106 F. 2d 207 (C. A. 3, 1939), affirming 37 B. T. A. 642 (1938).

At the hearing, petitioner introduced the testimony of several witnesses to the effect that all property located on Main Avenue in the

town of Weston had depreciated in value as a result of the flood of 1950. That may be true, but the time for the petitioner or any other taxpayer to claim a loss is the time when that loss is actually sustained, as evidenced by a completed and closed transaction, such as the sale of a building or its permanent abandonment. That did not happen here. As the Supreme Court long ago observed in *Weiss* v. *Wiener*, 279 U. S. 333, 335 (1929):

> The income tax laws do not profess to embody perfect economic theory. They ignore some things that either a theorist or a business man would take into account in determining the pecuniary condition of the taxpayer. They do not charge for appreciation of property or allow a loss from a fall in market value unless realized in money by a sale. United States v. S. S. White Dental Co., 274 U. S. 398, 401. A stockholder does not pay for accumulated profits of his corporation unless he receives a dividend. That is the general principle upon which these laws go. It is true that they allow for obsolescence of buildings, &c., where the loss is of materials, not of money; but there as elsewhere the loss must be actual and present, not merely contemplated as more or less sure to occur in the future. * * *

*Decision will be entered for the respondent.*