O. P. LUTZ, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 56663. Filed December 20, 1957.

*Marcus T. Hickman, Esq.*, for the petitioner.
*Hubert E. Kelly, Esq.*, for the respondent.

472

OPINION.

RICE, *Judge:* The issue in this case with respect to the reductions made in 1943 and 1945 in petitioner's account designated reserve for uncollected accounts receivable is whether he used the reserve method or the direct chargeoff method in claiming deductions for worthless debts. The respondent determined that petitioner was on the reserve method; petitioner argues that he was on the direct chargeoff method.

From the time petitioner began business in 1932, and throughout all of the years here material, the Code and previous revenue acts have permitted taxpayers to claim deductions in computing their income for accounts that become worthless. Two systems or methods are permitted in determining the amount of such deductions. One system is the direct chargeoff method which, in 1934, 1935, and 1936, required a taxpayer to ascertain which of his accounts receivable were, in fact, worthless, and, specifically, to charge them off during the year when they became so. Under the reserve system of claiming deductions for worthless accounts, a taxpayer is permitted to estimate what percentage of his total accounts receivable would become worthless; to set up a reserve to cover such accounts; and to deduct each year the net addition to the reserve which is necessary in order to maintain it at an adequate level to cover those accounts which he expects to become worthless. Under the reserve system, a taxpayer may not be entitled to claim a bad debt deduction every year because of the fact that the amount of his reserve, as it stands at the end of the year, may be adequate to cover all outstanding accounts which reasonably could be expected to become worthless in the light of his recovery experience. *Platt Trailer Co.*, 23 T. C. 1065 (1955) ; *Krim-Ko Corporation*, 16 T. C. 31 (1951) ; *Geyer, Cornell & Newell, Inc.*, 6 T. C. 96 (1946). When using the reserve method, a taxpayer does not make any chargeoffs of specific accounts receivable until such time as he finally determines an account to be worthless. At that time the account is removed from the subsidiary accounts receivable ledger and the amount thereof charged against the reserve, reducing it by that amount.

Under the direct chargeoff method, a taxpayer is required to include in income any recovery of a previously charged off bad debt in the year in which the recovery is received. Under the reserve system, collections on accounts receivable are also required to be included in income, but only if the specific account on which collection is received is one which has been removed from the subsidiary accounts receivable ledger and charged off against the reserve.

With this general description of the two methods of accounting for bad debts in mind, we turn to the facts of the record before us.

Petitioner claims he was using the direct chargeoff method for his worthless debts. In support of that argument, he cites the fact that at the end of each of the years 1934, 1935, and 1936, he went through his entire subsidiary accounts receivable ledger and selected the accounts which he proposed to charge off as worthless, and that he did, in fact, charge off as worthless debts the total amount of such selected accounts during those 3 years. He argues that the account designated reserve for uncollected accounts receivable was only the control or inventory account which he maintained for the purpose of showing the amount of worthless debts which he had incurred.

The respondent, on the other hand, argues that the facts of this record demonstrate conclusively that petitioner used the reserve method of accounting for bad debts. We agree with the respondent that while the petitioner's system may have been somewhat irregular, it was essentially the reserve system of claiming bad debt deductions.

To determine the amount of an adequate reserve for bad debts, taxpayers generally use a percentage of sales or accounts receivable. The petitioner here did not use any such percentage figure, and argues that because he did not do so, but, instead, selected individual accounts for his alleged chargeoffs, it proves that he was on the direct chargeoff method. The respondent argues, first of all, that the petitioner has not shown that he really considered the accounts which he used in determining his bad debt deductions in 1934, 1935, and 1936 to be actually worthless. We agree with the respondent that petitioner has not made that showing. The best that can be said is that he considered them doubtful or slow collections. No notation or memorandum was made on the individual accounts allegedly charged off; the individual cards were not segregated in any way from the current subsidiary accounts receivable ledger; and the list of alleged worthless accounts which petitioner prepared for his accountant contained substantial duplications of accounts which had already been charged off the previous year.

Since petitioner did not show the accounts were truly worthless, it would seem that he was actually establishing a reserve for bad debts rather than using a direct chargeoff method, and that he established such reserve by referring to the actual "doubtful" accounts, as distinguished from the really worthless ones, instead of trying to estimate what percentage of his accounts receivable would eventually become worthless. While the use of specific accounts receivable ordinarily indicates the adoption of the direct chargeoff method and therefore may have been a somewhat unusual method for determining the amount to be established as a reserve for bad debts, and the annual additions necessary to keep it at a proper level, we do not find that petitioner's use of such a system here was improper or incom-

patible with the basic requirements of the reserve method. See *Platt Trailer Co., supra.*

Aside from the somewhat unusual method of selecting the amounts which were added to the bad debt reserve in each of the years 1934, 1935, and 1936, which amounts were in turn claimed as bad debt deductions on the returns for such years, the petitioner's whole system of accounting for bad debts convinces us beyond doubt that he was using the reserve method. For instance, in 1941 his accountant decided that certain accounts receivable, totaling approximately $11,000, became truly worthless in that year since all efforts to collect them had been abandoned, and he quite correctly made a charge against the reserve account and reduced it by that amount to finally write them off the books. In 1943, and again in 1945, the accountant decided that petitioner's reserve for uncollected accounts receivable was excessive, and when petitioner's old accountant, in 1943, first reduced the reserve, he properly included the amount of the reduction in income for that year despite the petitioner's protest. Clearly, in the year when such a reserve account is found to be excessive, it must be reduced by an appropriate amount, and the amount of the reduction must be taken into income. That is so because additions to such a reserve were originally permitted as deductions against income. *Wichita Coca Cola Bottling Co.* v. *United States,* 152 F. 2d 6 (C. A. 5, 1945), certiorari denied 327 U. S. 806 (1946); *Morris Plan Ind. Bank* v. *Commissioner,* 151 F. 2d 976 (C. A. 2, 1945), affirming a Memorandum Opinion of this Court dated October 5, 1944; *Boston Consol. Gas Co.* v. *Commissioner,* 128 F. 2d 473 (C. A. 1, 1942), affirming on this point 44 B. T. A. 793 (1941); *Fort Pitt Brewing Co.,* 20 T. C. 1 (1953), affd. 210 F. 2d 6 (C. A. 3, 1954), certiorari denied 347 U. S. 989 (1954); *Geyer, Cornell & Newell, Inc., supra; Creamette Co.,* 37 B. T. A. 216 (1938). See also *Maryland Casualty Co.* v. *United States,* 251 U. S. 342 (1920).

Despite the old accountant's testimony that it was petitioner's intent, and his also, to claim bad debt deductions in 1934, 1935, and 1936 under the direct chargeoff system, the accountant admitted at the hearing that he considered the amount of the reduction of the reserve in 1943 to be income at that time, and that he still believed it was. If he thought that, he must have known the reserve account was a true reserve account and not just an inventory or control account.

Petitioner relies on such cases as *Dillon Supply Co.,* 20 B. T. A. 404 (1930); and *O. S. Stapley Co., Inc.,* 13 B. T. A. 557 (1928), for the proposition that the maintenance of a reserve account does not necessarily show that a taxpayer is on the reserve system in claiming bad debt deductions. Those cases are clearly distinguishable from the facts here. There, the Court found that the taxpayers ascertained

that the bad debts which they claimed were, in fact, worthless, and that they were properly charged off. The Court also found that the taxpayers in those cases were consistent in the handling of their bad debts in that any recoveries of debts previously charged off were included in income in the year in which such recoveries were received. Consistency here would have required petitioner to have taken the recoveries on the accounts which he claims to have charged off as worthless into income in the year in which received, if he were on the direct chargeoff system as he claims. He did not do that and under the reserve system he need not have done so unless some of the small recoveries received after 1941 represented recoveries on those specific accounts which were charged off against the reserve in that year. No showing was made that such was the case and, consequently, we can only conclude that by not including recoveries in income, petitioner was consistently following the reserve method of accounting for his bad debts.

The petitioner advanced another argument to the effect that he commenced using the direct chargeoff method in 1934, and even if his subsequent treatment of bad debts was essentially a reserve system, he made the change without the Commissioner's consent, contrary to the regulations, and that he must therefore be held to his original choice of the direct chargeoff method. We think that a specious argument. It is tantamount to saying that the petitioner should profit from his own inconsistencies. Suffice it to say that we are satisfied that in 1943 and 1945 the account designated reserve for uncollected accounts receivable was, in fact, a true bad debt reserve account within the meaning of the statute, and that the amounts of the reduction in that account, because it was considered excessive in those years, were taxable income.

So, also, we find no merit in petitioner's argument that if he were on the reserve system he should have reduced his bad debt reserve prior to 1943, and that because he failed to do so, he may not now be forced to include the reductions in income in years now open when, in fact, the reductions should have been made and the amounts thereof taken into income in earlier years now barred by the statute of limitation, citing *Geyer, Cornell & Newell, Inc., supra.* The simple answer to that argument is that petitioner did not show that the reserve was excessive in some earlier year. He evidently thought not, because he made the reductions in the years before us. All the respondent demands here is that such reductions, whenever made, be included in income.

We conclude that the respondent properly determined that the reductions of the reserve for uncollected accounts receivable in 1943 and 1945 in the respective amounts of $21,684.36 and $12,181.98 constituted

taxable income to the petitioner in those years. *Wichita Coca Cola Bottling Co.* v. *United States, supra; Morris Plan Ind. Bank* v. *Commissioner, supra; Boston Consol. Gas Co.* v. *Commissioner, supra.*

We think petitioner failed to show that he sustained a loss in 1943 from the abandonment of a building which he formerly used as a hosiery mill. We are not convinced from his testimony that he permanently abandoned the building in that year. Mere nonuse of property is not sufficient to constitute an abandonment. *Citizens Bank of Weston,* 28 T. C. 717 (1957), on appeal (C. A. 4, Sept. 18, 1957). In any event, the respondent argues, and we think correctly so, that even assuming the petitioner abandoned the building, he did not show that its salvage value was less than its depreciated basis on December 31, 1943. We therefore conclude that the respondent properly disallowed the deduction claimed.

*Decision will be entered for the respondent.*