HARVEY AND FLORENCE PULVERS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 650–66. Filed May 31, 1967.

---

Harvey D. Pulvers, pro se.
*James J. Cotter*, for the respondent.

FORRESTER, *Judge:* The respondent has determined deficiencies in petitioners' income taxes for the years 1960 and 1963 in the respective amounts of $770.68 and $1,964.06. Concessions have been made and certain items in the statutory deficiency notice have not been put into issue so that the only issue remaining for our decision is whether petitioners are entitled to a casualty loss deduction within the meaning of section 165(c)(3) of the Internal Revenue Code of 1954 [1] for the year 1963. The year 1960 is before us because of a claimed net operating loss carryback from the year 1963, said carryback being entirely dependent upon the alleged 1963 casualty loss.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

The petitioners, Harvey Pulvers and Florence Pulvers, are husband and wife who resided in Los Angeles, Calif., during all of the times in issue and when the petition herein was filed. Their joint Federal income tax returns for the years in issue were filed with the district director in Los Angeles, Calif.

In 1959 petitioners purchased and thereafter occupied as their home a residential property at 961 Kenfield Avenue in the Brentwood area of Los Angeles.

Brentwood is a mountainous or hillside area which was first developed in 1957 and 1958 by cutting and filling a hillside which was near or part of Bundy Canyon, in the city of Los Angeles. Petitioners' home was a two-story, modern, four-bedroom house, on a lot approximately 90 feet by 150 feet in size for which petitioners paid $52,500 and to which they had made certain additions and it is stipulated that in 1963 when the landslide which is described herein occurred petitioners' tax base in their home was at least $52,500.

In about November 1962 it became apparent that an earth movement was occurring in an area approximately 300 feet south and east of petitioners' home. On January 2, 1963, the landslide, which is the subject of petitioners' claim, occurred. This landslide was about 300 feet wide at its widest point and about 250 feet long (vertical) with its top or high edge starting just a few feet east of Kenfield Avenue and approximately 300 feet south and east of petitioners' residence which

---

[1] All statutory references are to the Internal Revenue Code of 1954.

was located on the west side of Kenfield Avenue. This landslide completely destroyed the homes at 928 and 936 Kenfield and damaged the home at 944 Kenfield. Immediately east of Kenfield Avenue at the center point of the slide the land dropped a total of about 30 feet.

It is stipulated that no physical damage whatsoever was inflicted upon or resulted to petitioners' property but they immediately evacuated their home, placed their furniture in storage and resided elsewhere until March 1963, at which time they returned to their home.

The landslide did not damage Kenfield Avenue or its east sidewalk and shortly after it occurred the City of Los Angeles installed a white wooden 2- by 4-inch fence, equipped with red reflectors, just east of the sidewalk and about 45 feet in length. In November 1965 a further slide occurred destroying this fence and about 45 feet of the sidewalk and the City of Los Angeles then installed twelve 28-foot-long telephone poles which were reenforced by 2- by 12-inch boards and sunk in caissons on the east side of the roadway and built an asphalt berm about 10 or 12 inches high and about 45 feet long on the east side of Kenfield Avenue in order to prevent water runoff into the slide area. This operation reduced the width of Kenfield Avenue by about 25 percent.

In the summer of 1966 some further earth movement eroded these bulwarks and in December 1966 the City of Los Angeles began replacing them with more permanent steel reenforcing. The north end of this damaged area is approximately 150 feet south and slightly east of the south edge of petitioners' property which has not yet been physically damaged in any way.

Kenfield Avenue is a cul-de-sac approximately 1200 feet long originating at Tigertail Road and winding in a northerly direction. There were approximately 20 homes facing on Kenfield Avenue at the time of the slide, most of which (including petitioners' residence) were located north of, or beyond, the slide point. Ingress and egress to these homes has not been materially interferred with and the City of Los Angeles has plans for an access road to the north end of Kenfield Avenue in the event that further earth movement cuts through Kenfield Avenue or necessitates its condemnation.

In the spring of 1963 the county tax assessor for the City of Los Angeles reappraised some 78 homes in the vicinity of the landslide and compiled a report reflecting their fair market values on a before and after basis. Such report classified declines in value into nine categories as follows:

(1) Psychological and loss of liquidity;
(2) Loss of access possible;
(3) Subsidence, cracking in the structure;

(4) Indicated to be in slide situation;

(5) Actual slide motion apparent in site;

(6) Condemned and occupied;

(7) Condemned and vacated;

(8) Top of slide, gain down; and

(9) Bottom of slide.

Such report assigned before and after values of $61,750 and $39,600 to petitioners' property and attributed the diminution in value of $22,150 to categories (1) and (2) above (psychological and loss of liquidity and loss of access possible).

In June 1964 petitioners installed a swimming pool and a rock garden on their property at a cost of approximately $10,000, said improvement being 100-percent financed with a home improvement loan from a commercial bank as to which the petitioners have personal liability.

On their 1963 joint income tax return the petitioners claimed a casualty loss deduction as a consequence of the landslide in the amount of $23,400 based upon "Value of Home and Lot 1/1/63, $65,000; Value of Home and Lot 1/3/63 (Based on 36% decline) $41,600." The Commissioner's statutory deficiency notice disallowed this claimed casualty loss deduction "because you have not established that you are entitled to such a deduction."

OPINION

None of the basic facts in this case are in serious dispute. The respondent seems to admit that the Kenfield Avenue landslide of January 2, 1963, was itself an "other casualty" within the meaning of such term as it is used in section 165(c)(3) and we are convinced that this is so. The respondent's sole contention is that a casualty which inflicts no actual physical damage upon the subject property but occasions only a hypothetical loss or a mere fluctuation in value or temporary adverse buyer resistance is not sufficient to support a casualty loss deduction within the meaning of the Code.

In our view the factual situation here requires the application of the same principles which were enunciated in *Citizens Bank of Weston* v. *Commissioner*, 252 F. 2d 425 (C.A. 4, 1958), affirming 28 T.C. 717. In that case a 1950 flood of the West Fork River inundated the bank's basement, inflicted damage on the building, and destroyed records and supplies. Thereafter the bank, fearing further flooding, no longer used its basement for the storage of its records which were irreplaceable. The Commissioner allowed claimed casualty loss deductions for all actual damages but disallowed a claimed item of $76,000 based upon forced discontinuance of the use of the basement for record storage and measured by an alleged decline in fair market value of the bank building by comparing alleged fair market values immediately before and

after the flood. In upholding the Commissioner's position the court said, (p. 428) :

> We need not here spell out in what other circumstances the utter hopelessness of any future use of property may become so manifest, even in the absence of physical destruction, as to call for a conclusion of permanent abandonment. * * * Moreover, while the flood control plan is still not in execution, it is a factor which the Tax Court may consider in appraising the probability or improbability of the permanency of the bank's decision not to store records in its basement.
>
> In a doubtful situation like this, if a deduction were allowed from the current year's earnings and the tax basis of the property were correspondingly reduced, then logically, if the flood control plan were achieved in a future year, restoration of the deduction would be required. Then might come other turns of the wheel, necessitating under the rule urged by the petitioner still other adjustments up or down. The scheme of our tax laws does not, however, contemplate such a series of adjustments to reflect the vicissitudes of the market, or the wavering values occasioned by a succession of adverse or favorable developments. United States v. White Dental Mfg. Co. of Pennsylvania, 1927, 274 U.S. 398, 401, 47 S. Ct. 598, 71 L. Ed. 1120 ; Weiss v. Wiener, 1929, 279 U.S. 333, 335, 49 S. Ct. 337, 73 L. Ed. 720. *Normally, the loss involved in impaired usefulness is recognized on sale or other disposition. It may also be recognized as deductible when an event has definitely set at rest the possibility of future use.* See: Williams Furniture Corporation, 1941, 45 B.T.A. 928. But where, as here found, the possibility is not remote that the owner will alter its decision not to use a portion of the property for a particular purpose, no deduction is allowable. [Emphasis supplied.]

See also *Joe B. Thornton*, 47 T.C. 1; and cf. *Clarence A. Peterson*, 30 T.C. 660.

We do not doubt that there was an immediate decline in the fair market value of petitioners' property immediately following the landslide of January 2 but there was no actual physical damage to that property, its use as a home was not impaired or materially changed, and certainly the possibility of its future use as such had not been ended. We look upon this diminution in value as psychological or hypothetical and due to temporary adverse buyer resistance. Our view in this is confirmed by the testimony of petitioners' expert witness who stated, *inter alia:*

> here in California I think we all know that people forget might[y] quick these problems and everything else in time—and time heals a lot of scars. * * *
>
> * * * * * * *
>
> * * * In other words, if the condition that exists on Kenfield were arrested and stabilized, * * *
>
> * * * If it were stabilized today, I would say that in the next two to five years it would be back to where it was the day before the slide took place.

Thus the view of petitioners' expert witness provides a forceable argument for the rationale enunciated in *Citizens Bank of Weston, supra,* that the scheme of our tax laws does not contemplate a series of adjustments to reflect the vicissitudes of the market.

Our research has revealed only one case (and the parties have cited us to no others) in which the casualty inflicted no actual physical damage upon the subject property. This is the case of *Stowers* v. *United States*, 169 F. Supp. 246 (S.D. Miss. 1958). In that case the plaintiff owned a residence in the choice residential section of Clifton Heights on the bluffs north of Natchez, Miss., and overlooking the Mississippi River. In the construction and maintenance of Clifton Avenue, on which the residence fronted, there had been inadequate provision made for escape of surface water and in October 1951 a large area of the bluff near petitioners' property was involved in a landslide which damaged Clifton Avenue so that the street was rendered impassable, perilous and no longer useful as a means of ingress and egress to and from the plaintiffs' residence. The street was closed at points on either side of such residence and the only remaining means of access to it was through an unimproved alleyway at the rear. In upholding the plaintiffs' claim for a casualty loss deduction the court said (pp. 248–249):

Such a damage arises because the residence was no longer useful; ingress and egress were denied by the closing of Clifton Avenue. It is fundamental that land has no value aside from the use that might be made of it. Plaintiffs' residence was rendered useless and, without access from a street, such as Clifton Avenue was before the catastrophe, its value was destroyed.

\* \* \* \* \* \* \*

Also, in Citizens Bank of Weston v. Commissioner of Internal Revenue, 4 Cir., 252 F. 2d 425, loc. cit. 428, the court said:

"It may also be recognized as deductible when an event has definitely set at rest the possibility of future use."

The factual differences between the instant case and *Stowers* are obvious. Petitioners have not been denied the use of Kenfield Avenue and in fact that use has not been much curtailed. If in the future further sliding should cause the street to be abandoned this would constitute an event to be examined upon its own facts and that event is not before us.

Section 1.165–7(a)(2), Income Tax Regs., provides in pertinent part that in determining the amount of casualty loss deductible the fair market value of the property immediately before and immediately after the casualty shall generally be ascertained by competent appraisal.

This appraisal must recognize the effects of any general market decline affecting undamaged as well as damaged property which may occur simultaneously with the casualty, in order that any deduction under this section shall be limited to the actual loss resulting from damage to the property.

In our view the January 1963 "other casualty" involved herein has not resulted in actual loss to the subject property as was the case in *Stowers* v. *United States*, *supra*, but has resulted only in a hypothetical loss or a mere fluctuation in value.

*Decision will be entered under Rule 50.*