STEPHEN L. SOLOMON and BARBARA SOLOMON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Solomon v. Commissioner
Docket No. 6814-77.
United States Tax Court
T.C. Memo 1980-87; 1980 Tax Ct. Memo LEXIS 496; 39 T.C.M. (CCH) 1282; T.C.M. (RIA) 80087; March 24, 1980, Filed *496 The garage and lower portions of petitioners' house were flooded in a rainstorm. As a result of this flooding, petitioners deducted the cost of repairing the actual damages they suffered, plus an amount with respect to their estimate of the decrease in fair market value of the house after the flood, as casualty losses, sec. 165(c)(3), I.R.C. 1954. Held: the cost of repairs is sufficient evidence of petitioners' casualty loss and their claim is to that extent allowed. Held further: petitoners' claim with respect to the alleged reductin of their house's fair market value relates to a mere fluctuation in value due to buyer's resistance and therefore no deduction for this latter claim is allowable. Roy F. Hutton, for the petitioners. Alan I. Appel, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: By letter dated March 31, 1977 respondent determined a deficiency in income taxes due from petitioners for their taxable year ended December 31, 1974 in the amount of $5,329. The only issue for our decision herein is whether petitioners are entitled to a certain claimed casualty loss deduction in the amount of $30,945. FINDINGS OF FACT Some of the facts were stipulated. The stipulation of facts, and exhibits attached threto, are incorporated herein by this reference. Petitoner Stephen L. and Barbara Solomon, husband and wife, resided in Port Chester, New York at the time they filed their petition herein. Petitioners' cash basis Federal income tax return for their taxable year ended December 31, 1974 was timely filed, utilizing the married filing jointly status, with the Internal Revenue Service at Holtsville, New York. As petitioner Barbara Solomon is a party hereto solely by virtue of having filed jointly with her husband, "petitoner" as used herein shall refer only to *498 petitioner Stephen L. Solomon. On May 25, 1973 petitioner purchased the land and house at 21 Pine Ridge Road, Port Chester, New York (the house) at a price of $75,500. The house is a detached one-story and basement, wood frame, single-family dwelling of a style sometimes referred to as a "front to back split-level." It is constructed on four levels with a two-car garage built into the house. There is a large drain across the width of the driveway at the entrance to petitioner's garage which is connected to the drainage system by a 12-inch pipe. Petitioner's house is similar in type, size and quality of construction to the other houses in the area. On the afternoon of September 3, 1974 their was a rainstorm in Port Chester, New York, including the area in which petitioner's house is located. During the 6-hour period of the storm a total of 6-1/2 inches of rain fell, of which 3 inches fell within a 1-hour period. Petitioner's house is built on a corner lot. It is built below street level so that the driveway from the street to the garage slopes downward. Because of the peculiarities of the layout of the house and streets surrounding it, a large amount of runoff generated *499 by the rainstorm of September 3, 1974 was channeled down the street above petitioner's house and onto the house's driveway where it ran into the garage. This same sort of confluence of surface waters in the garage during a rainstorm had occurred once before, prior to the time petitioner purchased the house. In an attempt to prevent a reoccurrence of this flooding the previous owner had constructed the large drain across the entrance of the garage and connected it to the town drainage system. Unfortunately during the September 3, 1974 storm this drain was insufficient to carry off the rain water collecting in petitioner's garage. As a result the garage and other low portions of the house were flooded. As a result of this flooding, petitoner suffered damages to his house and grounds. The parties have agreed that the actual cost of repairing or replacing damaged items is as follows: Description
Cost
Resurface driveway
$ 700
General electric services
25
Cleaning
235
Repair outside brick wall
230
Replace freezer
450
Repair or replace fencing
350
Repair garage floor
500
Repair garage door
600
Repair drain
150
Clean carpeting
1,000
Repair heater
250
Miscellaneous
250
TOTAL
$4,545
*500 The home insurance policy which was in effect and covering petitioner's house on September 3, 1974 specifically excluded damage caused by flood waters from its coverage. As a result, petitioner had, and has, no reasonable prospect of recovery with respect to these losses. Petitoner deducted $30,945 for flood damage on his taxable year 1974 return. OPINION Petitioner claimed a deduction of $30,945 for damage to his house as a result of flooding to his garage and neighboring rooms during a heavy rainstorm. We have found that petitioner suffered $4,545 in damages. In addition to this $4,545 in damages, however, petitioner apparently claims a deduction of $26,400 in respect of "a loss or decline in the value of their property immediately after the storm due to the flood." [1] Respondent argues that petitioner has failed to carry his burden of proof and should be allowed no casualty deduction. In the alternative respondent argues that no amount should be allowed in excess of the actual or estimated costs of repair as the excess is merely a fluctuation in value due to buyer resistance to purchasing a recently flooded house. *501 The flood that struck petitioner's house was clearly a casualty ejusdemgeneris to those specifically described in section 165(c)(3). [2] See Popa v. Commissioner, 73 T.C. (Oct. 22, 1979). The amount deductible to petitioner is thus the lesser of either (1) the difference between the fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty or (2) the adjusted basis of the property (which is, in this case, $75,500). Section 1.165-7(b)(1), Income Tax Regs.
*502 In determining the amount of loss deductible under section 165(c)(3), the fair market value of the property immediately before and immediately after the casualty must generally be evidenced by a competent appraisal. This appraisal must recognize the effects of any general market decline affecting undamaged as well as damaged property which may occur simultaneously with the casualty, in order that any deduction under this section be limited to the actual loss resulting from damage to the property. Section 1.165-7(a)(2)(i), Income Tax Regs.
The cost of repairs to the property damaged is acceptable as evidence of the loss of value if the taxpayer shows that (a) the repairs are necessary to restore the property to its value immediately before the casualty, (b) the amounts spent for such repairs are not excessive, (c) the repairs do not care for more than the damage suffered and (d) the value of the property after the repairs does not, as a result of repairs, exceed the value *503 of the property before the casualty. Section 1.165-7(a)(2)(ii), Income Tax Regs.
We have found that the cost of repairing the actual damage sustained by petitioner was $4,545. This amount clearly satisfies the requirements set out in section 1.165-7(a)(2)(ii), Income Tax Regs., and, therefore, may be used as substantive evidence of the amount of petitioner's casualty loss. On the other hand, the report filed by respondent's expert estimated a decline in fair market value of petitioner's house after the storm of $5,227, i.e. the cost of repair of $4,545, plus 15 percent of $4,545 in respect of the "supervisory details" involved in restoring the property. This testimony is, we believe, a competent appraisal estimating the decline in fair market value of petitioner's house within the meaning of section 1.165-7(a)(2)(i), Income Tax Regs. We believe that the resulting amount, i.e. $5,227, is a reasonable measure of petitioner's loss herein and find that amount deductible as a casualty loss within the meaning of section 165(c)(3), subject to the $100 floor. Petitioner's claim of $26,400 for the alleged *504 decline in the value of his property after the storm is subject to different considerations. There is simply no evidence in this record upon which he could base a finding that such a claim is allowable. Petitioner never had a "competent appraisal" of the property made so as to document the before and after flood values of the house. While the assessor of the Town of Rye, Port Chester, New York, indicated in a letter to petitioner dated March 5, 1979 that petitioner's house would be valued for assessment at an amount $22,500 less than the houses of his neighbors, this same assessor indicated at the trial herein that no devaluation of petitioner's house ever actually occurred and indicated that none would occur except as may, or may not, be required as a result of any future appraisal of the house for assessment purposes. This letter is far from the sort of appraisal required to sustain petitioner's claim herein. We can give it no useful probative value. While there was evidence that it would have cost between $10,000 and $15,000 to regrade petitioner's land, seal off the old garage, and build a new garage at a higher ground level, this sort of work would clearly constitute a *505 capital improvement of petitioner's property and could not, therefore, serve as the measure of his loss. See section 1.165-7(a)(2)(ii), Income Tax Regs.
It is apparent that, if any decline in the fair market value of petitioner's house occurred after the storm, it was a decline caused by buyer resistance to purchasing a flood damaged, flood prone, house. But there is no evidence in the record from which we could conclude that this resistance would be permanent or work an actual reduction in the house's fair market value as opposed to a "mere fluctuation in value." Section 165(c)(3) does not provide for a casualty loss deduction in respect of mere fluctuations in value. Thornton v. Commissioner, 47 T.C. 1, 7 (1966). The Fourth Circuit Court of Appeals stated the rule in Citizens Bank of Weston v. Commissioner, 252 F.2d 425, 428 (4th Cir. 1958), affg. 28 T.C. 717 (1957): The scheme of our tax laws does not, however, contemplate such a series of adjustments to reflect the vicissitudes of the market, or the wavering *506 values occasioned by a succession of adverse or favorable developments * * *. Normally, the loss involved in impaired usefulness is recognized on sale or other disposition. It may also be recognized as deductible when an event has definitely set at rest the possibility of future use. Petitioner has failed to carry his burden of proving that he actually sustained a loss in excess of the $5,227 we have previously found allowable. Welch v. Helvering, 290 U.S. 111, 115 (1933). No deduction is allowable for a mere fluctuation in value. Pulvers v. Commissioner, 48 T.C. 245, 249 (1967), affd. 407 F.2d 838 (9th Cir. 1969). Decision will be entered under Rule 155. Footnotes
1. Petitioner appears to have been a bit confused as to exactly what the amount of his claim herein is. He deducted $30,945 on his return. On brief he described the controversy before us as resulting "from the respondent's determination disallowing a deduction in the sum of $27,045.00, which sum the petitioners maintain represents the amount of casualty loss sustained by them * * *." Respondent, however, disallowed the full amount of petitioner's claim. We have decided, therefore, to give petitioner the benefit of the doubt and assume that his claim of $30,945 is still at issue, and that his claim for decline in value is for all that portion of $30,945 in excess of $4,545.↩
2. SEC. 165. LOSSES. (a) General Rule.--There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * *
(c) Limitation on Losses of Individuals.--In the case of an individual, the deduction under subsection (a) shall be limited to-- * * *
(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $100. * * *↩