T.C. Memo. 2000-56


UNITED STATES TAX COURT


MIGUEL MARTIN AND CLAUDIA P. PALOS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5871-98.                    Filed February 22, 2000.


Miguel Martin and Claudia P. Palos, pro sese.

Linette B. Angelastro, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, Judge:  Respondent determined a $20,244 deficiency in petitioners' 1994 income tax.  After concessions by petitioners, the issue remaining for our consideration is whether petitioners are entitled to a casualty loss for earthquake damage caused to a residence owned by them.

FINDINGS OF FACT

Petitioners resided at Monrovia, California, at the time their petition was filed. Petitioners, from 1989 through early 1999, owned real property located at 3748 Military Avenue, Los Angeles, California (Military property). The Military property was first listed for sale on October 1, 1993. Petitioners had been using the Military property as their personal residence up to the time they began their attempt to sell the property. Petitioners began moving their furniture out of the Military property shortly after the October 1993 listing for sale. Petitioners moved in with Mr. Palos' mother at some time prior to the January 17, 1994, earthquake, and, subsequent to the earthquake, moved into a newly purchased residence other than the Military property.

During 1993, petitioners commenced making improvements and repairs to the Military property in order to enhance its appearance and value for purposes of sale. The Northridge Earthquake occurred on January 17, 1994, and caused damage to petitioners' Military property. After the earthquake, petitioners continued to make improvements to the Military property and also began to repair the damage caused by the earthquake. The improvements, as opposed to repairs from earthquake damage, appear to represent the significantly greater portion of more than $60,000 in expenditures involving the

Military property. About 4 days after the Northridge earthquake, petitioners rented the Military property.

Petitioners filed a claim with their property insurance carrier with respect to the earthquake. The insurance adjuster estimated that the repair necessary to address the earthquake damage was $9,221, an amount that was less than petitioners' $9,530 policy deductible for earthquake damage. Petitioners consulted with a real estate company, seeking an opinion as to the decrease in fair market value, if any, due to the earthquake. The real estate company opined that the Military property lost approximately $30,000 in value due to the earthquake. The reduction in value was attributable to the actual damage and also to the safety issues that may be perceived by potential buyers of damaged older homes in areas prone to earthquake damage.

On their 1994 joint income tax return, petitioners, on advice of their return preparer, claimed a $25,000 business casualty loss on the premise that the Military property was held for business or other income-producing purposes; i.e., for rental or sale at the time of the earthquake. Respondent determined that petitioners were not entitled to a casualty loss.

OPINION

Section 165(a)[1] allows a deduction for "any loss sustained during the taxable year and not compensated for by insurance or otherwise." Although an individual taxpayer's business and personal casualty losses are deductible under section 165(c), there is a distinction between them. Casualty losses incurred in a business or other profit-seeking activity can be fully deductible, whereas personal casualty losses are subjected to a $100 exclusion and must exceed 10 percent of a taxpayer's adjusted gross income. See sec. 165(h)(1) and (2). That distinction is critical to petitioners because the limitations on personal losses may reduce or eliminate petitioners' ability to deduct a casualty loss deduction. There is no dispute about the occurrence of the earthquake, and respondent seems to agree that petitioners had some loss; however, respondent contends that the loss was personal and was of an amount that would not have exceeded the threshold limitations.

First, we consider the amount of petitioners' loss. A casualty loss is the difference between the fair market value of the property immediately before and immediately after the casualty. See sec. 1.165-7(a)(2)(i), Income Tax Regs.

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the tax year under consideration, and Rule references are to this Court's Rules of Practice and Procedure.

Deductions under the above-cited regulation are, however, "limited to the actual loss resulting from damage to the property." Id. An alternative approach to valuing a loss from damage to property is for a taxpayer to present evidence of repairs to the subject property. See sec. 1.165-7(a)(2)(ii), Income Tax Regs. In that regard, a taxpayer must show that the repairs were made to restore the property to its precasualty condition and not to improve the property. See id.

In this case, petitioners provided evidence in an attempt to show the effect of earthquake damage on the fair market value of their property. The real estate agent's opinion that the value decreased by about $30,000 is in line with the $25,000 claim petitioners made on their 1994 income tax return. The opinion, however, was based on actual damage and also on the safety issues that may be perceived by potential buyers of damaged older homes in areas prone to earthquake damage. Under the above-quoted regulation, however, petitioners' claim would be limited to the amount of actual damage. See id.; see also Kamanski v. Commissioner, 477 F.2d 452 (9th Cir. 1973), affg. T.C. Memo. 1970-352; Pulvers v. Commissioner, 407 F.2d 838, 839 (9th Cir. 1969), affg. 48 T.C. 245 (1967); Chamales v. Commissioner, T.C. Memo. 2000-33.

Petitioners also attempted to show that the damage exceeded $25,000 by showing the extensive expense incurred in connection

with their Military property during the period preceding and following the earthquake. Petitioners' evidence of actual repairs, however, falls short of showing losses from earthquake damage in excess of $9,221, the amount determined by petitioners' insurance company. It is difficult to delineate between amounts that were being used to renovate and improve and those that were directly attributable to the earthquake. In addition, the insurance company's estimate that actual repairs attributable to earthquake damage were $9,221 militates against petitioners' claims. We hold that petitioners have not shown that more than $9,221 damage occurred from the earthquake.

Finally, we must decide whether petitioners' property had been converted from a personal residence to business or income-producing property prior to the time that earthquake damage was incurred. Respondent contends that the record contradicts petitioners' claim that the property had been converted to business (rental) or income-producing property. We agree. The parties have addressed this aspect of the case in two parts. They disagree as to whether petitioners no longer resided in the property and whether the property had been converted to business or income-producing property as of the occurrence of the January 17, 1994, earthquake.

The record reflects that petitioners started to move furnishings out of the Military property beginning in October

1993 and that substantial improvements and repairs were begun and remained ongoing after that time and through the time of the earthquake. Petitioners' evidence was sufficient to establish that the Military property was no longer used as their personal residence as of January 17, 1994.

Respondent also relies on a statement that respondent's agent testified was made during the examination. The testimony of respondent's agent is as follows:

> I'm not sure if it was the first interview or the second one. I did see * * * [petitioner] two times, once in his home and once in the office after hours.

> But I know we discussed the earthquake because I mentioned--I believe I mentioned to him what happened to us in my home, and I know he said his furniture was in the house and that he wasn't out of the house yet.

Petitioners and Mr. Palos' mother, however, testified under oath that they were no longer using the Military property as a residence by the time of the earthquake. In addition, with extensive repairs underway at the Military property beginning around October 1993, it is unlikely that petitioners remained in the house when other and better choices were available to them. Accordingly, we find that petitioners were not using the subject property as their personal residence at the time of the earthquake.

Respondent also questions whether the Military property was held for sale or rent in such a manner as to be considered business or income-producing property within the meaning of

section 165. Property that is used as a taxpayer's residence may be converted to rental or other income-producing property within the meaning of section 165(a). See, e.g., section 1.165-9, Income Tax Regs. (concerning the sale of residential property). On that point, petitioners' evidence did not show that the property had definitively been converted to rental or other income-producing property at the time of the earthquake.

Generally, taxpayers must do more than merely list their residential realty to convert its use from personal to one which would permit a loss under section 165 that is not subject to the limitation of section 165(h)(1) and (2). See, e.g., Newcombe v. Commissioner, 54 T.C. 1298, 1302-1303 (1970); Rogers v. Commissioner, T.C. Memo. 1965-8. Although petitioners had listed the property for sale and were continuing to make repairs to enhance the property, some of their furniture remained, and the property was listed for sale rather than for rent. Petitioners were able to lease the property just 4 days after the earthquake occurred, but these events are not sufficient to place them over the threshold necessary to convert their personal residence into property for which section 165(c)(1) or (c)(2) losses would be available. Accordingly, the $9,221 casualty loss is subject to the limitations of section 165(h)(1) and (2).

Decision will be entered under Rule 155.