T.C. Memo. 2001-218

UNITED STATES TAX COURT

ROBERT CARMELO TORRE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15186-99.                    Filed August 13, 2001.

Robert Carmelo Torre, pro se.

<u>Julie L. Payne</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WOLFE, <u>Special Trial Judge</u>:  Respondent determined a
deficiency of $840 in petitioner's Federal income tax for 1997.
The issues for decision are:  (1) Whether petitioner must include
in income dividends of $5,603 that he received during 1997 from
Fidelity Investments, and (2) whether petitioner is entitled to a
casualty or theft loss of $48,890.15 for 1997.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated herein by this reference. Petitioner resided in Vancouver, Washington, when he filed the petition in this case.

A. <u>Long-Term Capital Gain</u>

During 1997 petitioner received from Fidelity Investments dividends of $10,469.05, short-term capital gain of $3,035.05, and long-term capital gain of $5,603.72.

On Schedule B, Interest and Dividend Income, of his 1997 individual income tax return, petitioner reported gross dividends and distributions of $13,504.40, deducted from this amount capital gain distributions of $5,603.72, and carried forward to line 9 of his Form 1040 for 1997 the resulting amount of $7,900.68. Petitioner reported the capital gain distributions on Schedule D, Capital Gains and Losses, Form 1040 for 1997. Nevertheless, in effect, petitioner simply omitted from his income reported for 1997 an amount equal to the long-term capital gain distributions he received for that year. On July 20, 1999, respondent issued a notice of deficiency, adjusting petitioner's 1997 gross income by including in petitioner's income the $5,603

he had omitted from his tax return.

B.  Casualty/Theft Loss

In 1996, petitioner purchased a house in Coos Bay, Oregon, for $40,000.  Shortly after petitioner moved in, his neighbors allegedly began harassing him and vandalizing his property.  According to petitioner, one neighbor in particular routinely allowed his dog to defecate on petitioner's yard.  Petitioner claims that the police habitually failed to stop the harassment and vandalism to which he was subjected.  Petitioner considered that he was a victim of racial profiling.  At one point, according to his testimony, the police told him:  "We're looking for Mexicans like you with drugs and guns."  After one particular altercation with his neighbor, petitioner was arrested and incarcerated for 4 days.  Petitioner testified that the police in Coos Bay refused to prosecute his neighbor for harassment, although the neighbor taunted petitioner and sprayed him with pepper mace.  Petitioner introduced supporting photographs and correspondence concerning the failure of local authorities to prosecute after he had been sprayed.  In 1998, petitioner sold his house in Coos Bay, Oregon.  Explaining why he sold the house, petitioner said:  "police started following me around town, and they had tapped my phone line, and I just felt like I couldn't live there safely anymore, so I fled and moved up to Washington".

Petitioner claims a casualty loss of $48,890.15.[1]

OPINION

## A. Long-Term Capital Gain

Petitioner's investment with Fidelity Investments in 1997 was in shares of a mutual fund. The mutual fund's asset allocation, as of December 31, 1997, was 33 percent stock, 60 percent bonds, and 7 percent short-term securities. Petitioner argues that because line 5 instructs the taxpayer to include "gross dividends and/or other distributions on stock", the $5,603 long-term capital gain does not belong on line 5 of Schedule B (emphasis added). Since the distribution in question came from a mutual fund with an asset allocation of 60 percent in bonds, petitioner argues that he need not include on line 5 the amount of the capital gain distribution from shares of this mutual fund.

Section 61(a) provides that gross income includes "all income from whatever source derived," unless otherwise provided. Section 61(a)(7) specifically provides that dividends are included in gross income, and section 61(a)(3) provides that gross income includes gains derived from dealings in property.

---

[1] This figure represents the net amount claimed after applying the limitation provisions of sec. 165(h)(1) and (2), which reduces the gross amount claimed, $50,781.23, by $1,891.08. At trial, petitioner claimed that he had made improvements to the house, increasing its adjusted basis from $40,000 to $50,781.23. On Form 4684, Casualties and Thefts, petitioner listed the value of his house before the casualty as $50,781.23, and stated that the value of the house after the casualty was zero, although he sold the house the following year for $39,500.

The definition of gross income in the income tax law is inclusive on its face, and the concept of inclusiveness is long established. See Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429-430 (1955). As to distributions of capital gain dividends (defined in section 852(b)(3)(C)), by regulated investment companies or mutual funds, section 852(b)(3)(B) states: "A capital gain dividend shall be treated by the shareholders as a gain from the sale or exchange of a capital asset held for more than 1 year." Section 1222(3) states that the term "long-term capital gain" means "gain from the sale or exchange of a capital asset held for more than 1 year". Net long-term capital gains are subject to tax at the preferential rates set forth in section 1(h).

Consistent with this statutory mandate, Form 1040 (1997) U.S. Individual Income Tax Return, Schedule B, Interest and Dividend Income, and Schedule D, Capital Gains and Losses, together ensure that capital gain distributions are taxed. In addition to instructing the taxpayer to "Include gross dividends and/or other distributions on stock here", line 5 of Schedule B also states: "Any capital gain distributions and nontaxable distributions will be deducted on lines 7 and 8". The tax form clearly provides that all capital gain distributions (as well as nontaxable distributions) must be listed on line 5, and there is no reasonable argument that distributions on shares of mutual

funds are exempt from this requirement in whole or in part. The pattern of the form is that capital gain distributions are included with other items on line 5 of Schedule B, are deducted on line 7 of Schedule B, and are included on line 13 of Schedule D. The form is certainly comprehensible and results in capital gain dividends' being taxed at appropriate rates.

Moreover, even if the schedule had provided misleading or erroneous information, the law is well settled that the authoritative sources of Federal tax law are the statutes, regulations, and judicial decisions, not informal publications or instructions of the Internal Revenue Service. Casa De La Jolla Park, Inc. v. Commissioner, 94 T.C. 384, 396 (1990); Zimmerman v. Commissioner, 71 T.C. 367, 371 (1978), affd. without published opinion 614 F.2d 1294 (2d Cir. 1979); Green v. Commissioner, 59 T.C. 456, 458 (1972); Graham v. Commissioner, T.C. Memo. 1995-114; see also Adler v. Commissioner, 330 F.2d 91, 93 (9th Cir. 1964), affg. T.C. Memo. 1963-196. Accordingly, petitioner's capital gain distribution from his mutual fund holding during the year in issue is includable in his income as long-term capital gain and properly should have been reported on line 5 of Schedule B, of his income tax return for 1997.

B. Casualty/Theft Loss

Under section 165(a) and (c)(3), subject to limitations, an individual is permitted a deduction for a loss that arises from

"fire, storm, shipwreck, or other casualty, or from theft."
Personal casualty or theft losses are deductible only to the
extent that the loss exceeds personal casualty gains and $100
and, additionally, 10 percent of adjusted gross income. Sec.
165(h)(1) and (2). Casualty losses are deductible in the year
the loss is sustained. Sec. 165(a); sec. 1.165-7(a)(1), Income
Tax Regs. A casualty loss is treated as sustained during the
taxable year in which the loss occurs as evidenced by "closed and
completed transactions and as fixed by identifiable events
occurring in such taxable year." Sec. 1.165-1(d)(1), Income Tax
Regs.

The term "other casualty" in section 165(c)(3) is not
expressly defined in either the statute or the regulations. This
Court construes the term "other casualty" in section 165(c)(3) by
applying the rule of ejusdem generis. Maher v. Commissioner, 76
T.C. 593, 596 (1981), affd. 680 F.2d 91 (11th Cir. 1982); Dodge
v. Commissioner, 25 T.C. 1022, 1024 (1956). Under this rule of
statutory construction, general words that follow the enumeration
of specific classes are construed as applying to things of the
same general class as those enumerated. Thus, in order for the
loss to be deductible, the taxpayer must prove that the
destructive event or happening was similar in nature to a fire,
storm, or shipwreck. Accordingly, "other casualty" denotes "'an
undesigned, sudden and unexpected event'", Durden v.

Commissioner, 3 T.C. 1, 3 (1944) or a "sudden, cataclysmic, and devastating loss", Popa v. Commissioner, 73 T.C. 130, 132 (1979). Conversely, the term "excludes the progressive deterioration of property through a steadily operating cause." Fay v. Helvering, 120 F.2d 253 (2d Cir. 1941), affg. 42 B.T.A. 206 (1940).

Petitioner described his loss at trial, saying: "It's a loss of the money I had invested in the house in that town, because the police forced me to leave the town. So it's deprivation of rights, and loss." In sum, petitioner argues that because of the hostility and racism directed at him by the citizens and police of Coos Bay, he is entitled to a casualty loss deduction for the alleged decline in value of his house.

Petitioner's asserted loss is not the type of loss contemplated by section 165(c)(3). As stated above, section 165(c)(3) contemplates a sudden or cataclysmic event. Harassment does not qualify as a sudden or cataclysmic event. In Kalbfleisch v. Commissioner, T.C. Memo. 1991-61, the taxpayer claimed a casualty loss with regard to his rent expense on account of harassment he endured from his neighbors and fellow workers. We denied a casualty loss deduction because there was no sudden identifiable outside force:

> The claimed casualty loss with regard to petitioner's rent expense does not satisfy the statutory requirement that there be a sudden identifiable outside force * * * . Assuming that petitioner's allegations of continuous harassment by neighbors and fellow workers deprived him of peaceful usage of his apartment, we

find that such harassment, in and of itself, does not fall under the definition of a casualty loss. Petitioner's remedy from the harassment and vandalism to his peaceful enjoyment would be found in civil or criminal remedies, but not in the Internal Revenue Code. [Id.]

Furthermore, this Court has repeatedly held that "physical damage or destruction of property is an inherent prerequisite in showing a casualty loss." Citizens Bank v. Commissioner, 28 T.C. 717, 720 (1957), affd. 252 F.2d 425 (4th Cir. 1958); see also Chamales v. Commissioner, T.C. Memo. 2000-33. The Court of Appeals for the Ninth Circuit, to which an appeal in the present case would lie, has adopted this rule requiring physical damage. See, e.g., Kamanski v. Commissioner, 477 F.2d 452 (9th Cir. 1973), affg. T.C. Memo 1970-352; Pulvers v. Commissioner, 407 F.2d 838, 839 (9th Cir. 1969), affg. 48 T.C. 245 (1967).

Petitioner has offered no evidence showing any serious physical damage or destruction to his property. Petitioner made no attempt to quantify the damage, if any, to his property from the defecation of his neighbor's dog. We are not even convinced that any such damage would have exceeded the $100 threshold of section 165(h)(1). Accordingly, we find that petitioner is not entitled to a casualty loss for 1997.

A loss arising from theft generally is allowable as a deduction under section 165(a) for the taxable year in which the loss is sustained. Sec. 1.165-8(a)(1), Income Tax Regs. Whether a theft within the meaning of section 165 has occurred "depends

upon the law of the jurisdiction wherein the particular loss occurred." <u>Monteleone v. Commissioner</u>, 34 T.C. 688, 692 (1960).

Petitioner essentially conceded that he is not entitled to a theft loss. At trial, petitioner described the nature of the loss, saying: "I don't know how you would classify it, but it's not really a theft. It's a loss of the money I had invested in the house in that town, because the police forced me to leave the town. So it's deprivation of rights, and loss."

Regardless of the conflicts petitioner may have had with his neighbors and the police in Coos Bay, his house was not the subject of a theft. On the contrary, in 1998 he sold the house for $39,500, little less than the price for which he purchased it. Accordingly, we hold that petitioner is not entitled to a theft loss deduction for 1997.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.