T.C. Memo. 1997-11

UNITED STATES TAX COURT

HUMES HOUSTON HART, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20452-94.                     Filed January 7, 1997.

Humes Houston Hart, pro se.

George D. Curran, for respondent.

MEMORANDUM OPINION

VASQUEZ, Judge:  Respondent determined deficiencies in and
additions to petitioner's Federal income taxes as follows:

| Year | Deficiency | Additions to Tax Sec. 6651(a)(1) |
|------|------------|----------------------------------|
| 1987 | $10,221 | $100 |
| 1988 | 14,219 | 1,235 |
| 1989 | 635 | --- |

The issues for decision are: (1) Whether petitioner was a "dealer", a "trader", or an "investor" with respect to losses he sustained in buying and selling stock during 1987, 1988, and 1989;[1] (2) alternatively, whether losses petitioner sustained in 1987 from the sale of stock to satisfy a margin call requirement are deductible as either a casualty or theft loss; (3) whether petitioner may deduct a $58,462 net operating loss (NOL) in 1988; (4) whether petitioner may deduct, as charitable contributions, certain payments he made in 1987 and 1988; (5) whether petitioner is entitled to a deduction under section 215(a)[2] for amounts paid to his former spouse in 1988 prior to the entry of a State court order for support; and (6) whether petitioner is liable for the addition to tax under section 6651(a)(1) for the years 1987 and 1988.

For convenience, we combine our findings of fact and opinion under each separate issue heading. We note that for all of the issues, petitioner has the burden of proving error in respondent's determinations. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying

---

[1] Related issues are the classification of dividend income received on the stock, margin interest, and other investment expenses related to holding the stock. Petitioner reported these items on a Schedule C, Profit or (Loss) From Business or Profession.

[2] All section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure.

exhibits are incorporated herein by this reference.  At the time the petition was filed, petitioner maintained a permanent legal address in Waynesville, North Carolina.

1.  Dealer, Trader, or Investor

During the years in issue, petitioner was employed full time as an information systems engineer--first by General Electric Co. until August 1988 and then by Systems Planning Corp. until March 1989.  Petitioner began investing in the stock market in 1975. Until June 1987, petitioner considered himself an investor, after which he considered himself a "securities trader and dealer". Beginning with his 1987 individual Federal income tax return, petitioner reported all activity relating to his stock purchases and sales, such as dividend income, investment expenses, and gains and losses, on Schedule C.

Petitioner considered his stock activity a part-time endeavor during his full-time employment with General Electric Co. and Systems Planning Corp.  Petitioner committed approximately 10-20 hours of his free time each week to this activity.  Petitioner listened to the radio for stock reports and prices during his lunch hour.  During the evenings at home, he studied newspaper quotations, books, magazine articles, ran commercial software on his computer, and analyzed stock market data.  Petitioner gave his trading instructions to his broker in the morning, prior to the market opening.

Petitioner did not hold any licenses or other professional certifications in the securities industry. Petitioner conducted all of his purchases and sales of securities either through a full service or discount broker. Petitioner maintained brokerage accounts with Ferris & Co., Inc., PaineWebber, Inc., and First Union Brokerage Services, Inc., during the years in issue.

All of petitioner's stock transactions were engaged in solely for his own account. Petitioner's stock activity is summarized as follows:

### 1987

| Month | Account | Purchases | Sales |
|---|---|---|---|
| 1/87 | Ferris & Co. | 1 | 1 |
| 2/87 | Ferris & Co. | 1 | 0 |
| 3/87 | Ferris & Co. | 1 | 3 |
| 4/87 | Ferris & Co. | 0 | 0 |
| 5/87 | Ferris & Co. | 0 | 0 |
| 6/87 | Ferris & Co. | 0 | 0 |
| 7/87 | Ferris & Co. | 3 | 3 |
| 8/87 | Ferris & Co. | 5 | 2 |
|  | PaineWebber | 2 | 0 |
| 9/87 | Ferris & Co. | 2 | 3 |
| 10/87 | Ferris & Co. | 1 | 7 |
|  | PaineWebber | 2 | 2 |
| 11/87 | Ferris & Co. | 0 | 1 |
|  | PaineWebber | 7 | 8 |
| 12/87 | Ferris & Co.[1] | 0 | 0 |
|  | PaineWebber | 14 | 6 |

### 1988

| Month | Account | Purchases | Sales |
|---|---|---|---|
| 1/88 | PaineWebber | 4 | 10 |
| 2/88 | PaineWebber | 7 | 8 |
| 3/88 | PaineWebber | 4 | 4 |
| 4/88 | PaineWebber | 5 | 5 |
| 5/88 | PaineWebber | 0 | 2 |
| 6/88 | PaineWebber | 2 | 0 |
| 7/88 | PaineWebber | 0 | 0 |
| 8/88 | PaineWebber | 0 | 0 |
| 9/88 | PaineWebber | 1 | 0 |
| 10/88 | PaineWebber | 0 | 0 |
| 11/88 | PaineWebber | 0 | 0 |
| 12/88 | PaineWebber | 0 | 1 |

### 1989

| Month | Account | Purchases | Sales |
|---|---|---|---|
| 1/89 | PaineWebber | 1 | 1 |

| 2/89 | PaineWebber | 2 | 2 |
| 3/89 | PaineWebber | 1 | 0 |
| 4/89 | PaineWebber | 0 | 1 |
| 5/89 | PaineWebber | 2 | 0 |
| | First Union | 1 | 0 |
| 6/89 | PaineWebber | 1 | 0 |
| 7/89 | PaineWebber | 3 | 1 |
| | First Union | 0 | 1 |
| 8/89 | PaineWebber | 4 | 9 |
| 9/89 | PaineWebber | 0 | 0 |
| 10/89 | PaineWebber[2] | 0 | 0 |

[1] Petitioner closed his Ferris & Co. brokerage account in December 1987.
[2] Petitioner closed his PaineWebber brokerage account in October 1989.

Petitioner reported Schedule C losses of $123,801 in 1987, $11,604 in 1988, and $5,349 in 1989 resulting from his stock activity. Respondent disallowed petitioner's Schedule C losses for 1987, 1988, and 1989. Respondent determined that petitioner was not a "dealer" or "trader" in securities and that the net losses he realized were capital losses subject to the limitations of sections 165(f) and 1211(b). Respondent also determined that petitioner's stock transactions were reportable on Schedule D, his investment expenses were reportable on Schedule A, and his dividend income was reportable on Schedule B. Petitioner argues that he was either a "dealer" or "trader" in securities, and the losses and related items therefrom were properly reportable on Schedule C.

Section 165 generally provides a deduction for any loss sustained during the taxable year and not compensated by insurance or otherwise. Section 165(f), however, provides that losses from the sales of capital assets should be allowed only to the extent allowed under sections 1211 and 1212. Section 1221 defines capital assets as any property held by the taxpayer,

whether or not connected with his trade or business.  Section 1221(1), however, creates an exception to the definition of a capital asset:

> Stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business * * *

Consequently, taxpayers, unless they are dealers, generally recognize capital gain or loss upon the sale or exchange of their stock, rather than ordinary gains or losses.  In determining whether a taxpayer who is purchasing and selling securities is engaged in a trade or business, courts have distinguished between a dealer, a trader, and an investor.  See Estate of Yaeger v. Commissioner, 889 F.2d 29 (2d Cir. 1989), revg. on another issue, affg. in part, and remanding T.C. Memo. 1988-264; see also Moller v. United States, 721 F.2d 810, 813 (Fed. Cir. 1983).

A dealer does not hold securities as capital assets if held in connection with his trade or business.  A dealer falls within the section 1221(1) exception to capital asset treatment because he deals in property held primarily for sale to customers in the ordinary course of his trade or business.  A trader, on the other hand, holds securities as capital assets whether or not such assets are held in connection with his trade or business.  A trader does not have customers and is therefore not considered to fall within an exception to capital asset treatment.  King v. Commissioner, 89 T.C. 445, 458 (1987); Kemon v. Commissioner, 16

T.C. 1026, 1032-1034 (1951). Petitioner concedes on brief and on stipulation that he did not hold his stock as inventory; he did not sell to customers; and he did not hold any licenses or certifications within the securities industry. We hold that petitioner was not a dealer. Therefore, the stocks petitioner purchased and sold were capital assets in his hands, and the net losses were capital losses.

Consequently, if petitioner was engaged in the trade or business of buying and selling stocks, it was as a "trader" rather than as a "dealer". Unlike an investor, a trader's expenses are deducted in determining adjusted gross income rather than as itemized expenses.[3] Moreover, interest paid on loans used to purchase or carry the trader's positions is not subject to the investment interest limitations of section 163(d). See King, supra; Paoli v. Commissioner, T.C. Memo. 1988-23.

In determining whether a taxpayer who manages his own investments is a trader, we consider the following nonexclusive factors: (1) The taxpayer's investment intent; (2) the nature of the income to be derived from the activity; and (3) the frequency, extent, and regularity of the taxpayer's securities transactions. Moller v. United States, supra at 813; Mayer v. Commissioner, T.C. Memo. 1994-209. Thus, a taxpayer is engaged

---

[3] In contrast to trade or business expenses, a taxpayer's investment-related expenses that are deductible under sec. 212 are subject to a limitation under sec. 67(a) and do not reduce alternative minimum taxable income.

in carrying on a trade or business as a securities trader only where both of the following are true:

(1) The taxpayer's trading activity is substantial. King v. Commissioner, supra at 458-459; Mayer v. Commissioner, supra. In this regard, the taxpayer's trading activity must be frequent, regular, and continuous enough to constitute a trade or business; sporadic trading does not constitute a trade or business. Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).

(2) The taxpayer seeks to catch the swings in the daily market movements, and to profit from these short-term changes, Moller v. United States, supra at 813; Purvis v. Commissioner, 530 F.2d 1332, 1334 (9th Cir. 1976), affg. T.C. Memo. 1974-164; Liang v. Commissioner, 23 T.C. 1040, 1043 (1955), rather than to profit from the long-term holding of investments, Estate of Yaeger v. Commissioner, supra at 33; Mayer v. Commissioner, supra. In connection with this, courts look at whether the taxpayer's securities income is principally derived from frequent and substantial sale of securities rather than from dividends, interest, or long-term appreciation. Moller v. United States, supra at 813; King v. Commissioner, supra at 458-459; Liang v. Commissioner, supra at 1043.

Petitioner does not meet the first prong of this two-part test. In each year in issue, his trading was not substantial; petitioner was not frequent, regular, or continuous in his trading, as shown by the above summary. We conclude that

petitioner was an investor in securities and not a trader. As such, he was not conducting a trade or business. See, e.g., Purvis v. Commissioner, supra at 1334 (taxpayer was merely an investor where, among other things, his sales of stock were not regular and continuous); Paoli v. Commissioner, T.C. Memo. 1991-351 (taxpayer consummated 326 securities sales during the year at issue involving approximately $9 million worth of stock or options; however, taxpayer was merely an investor where sales of stocks were not sufficiently regular and continuous during the entire year to constitute a trade or business).

## 2.  Casualty or Theft Loss

On October 19, 1987 (Black Monday), the Dow Jones Industrial Average substantially declined. Petitioner's Ferris & Co. account likewise declined in value. Petitioner's broker at Ferris & Co. made a margin call on petitioner on October 20, 1987. Petitioner was required to sell various stocks in his Ferris & Co. account to meet his margin requirement. Petitioner argues that he is entitled to deduct the loss which he incurred on the sale of this stock to satisfy his margin requirement as either a casualty or theft loss.

Petitioner contends that he suffered a casualty loss in that he suffered a sudden and catastrophic loss in the value of his stock portfolio, which was realized the following day when he was required to liquidate his trading account to meet his margin requirement. Petitioner contends that the events of October 1987

were a "once only occurrence. No stock market decline in history * * * has been so sudden or extensive." Whatever the historical significance of Black Monday may be, petitioner must nevertheless prove that this loss arose from a "casualty" within the meaning of section 165(c)(3). Petitioner has failed to do so.

The loss sustained by petitioner resulted not from a casualty but from the sale of his stock to satisfy his margin requirement. This sale was not a casualty loss within the meaning of the statute, which generally contemplates some physical damage to the taxpayer's property. See White v. Commissioner, 48 T.C. 430, 435 (1967); Citizens Bank of Weston v. Commissioner, 28 T.C. 717, 720 (1957), affd. 252 F.2d 425 (4th Cir. 1958). We also note that losses which result from the mere fluctuation in value are not deductible as casualty losses. See, e.g., Pulvers v. Commissioner, 407 F.2d 838 (9th Cir. 1969), affg. 48 T.C. 245 (1967); sec. 1.165-4(a), Income Tax Regs.

Alternatively, petitioner argues that the losses he sustained from meeting his margin call were the result of theft perpetrated by Ferris & Co. or one of its agents. Section 165(a) allows a deduction for any loss "sustained" during the taxable year and not compensated for by insurance or otherwise, including losses arising from theft. Sec. 165(c)(3). Petitioner has the burden of showing that a theft loss occurred. Rule 142(a). A deduction for a theft loss can only be sustained if a theft occurred under the applicable State law. Paine v. Commissioner,

63 T.C. 736, 740 (1975), affd. without published opinion 523 F.2d 1053 (5th Cir. 1975). Petitioner did not introduce any evidence at trial which would support a finding that any of his stock or securities were stolen. To the contrary, the record shows that the loss petitioner sustained resulted from the sale of his stock to satisfy his margin requirement. Petitioner has failed to establish that he is entitled to a theft loss. See, e.g., <u>Marr v. Commissioner</u>, T.C. Memo. 1995-250.

3. <u>Net Operating Losses</u>

On his return for 1988, petitioner claimed a net operating carryover deduction in the amount of $58,462. In her notice of deficiency, respondent disallowed the NOL deduction for 1988.

Petitioner offered no evidence or testimony at trial with respect to the source or how he arrived at this deduction. Petitioner's 1988 tax return simply shows "Net Operating Loss (1987) $58,461.95". Furthermore, petitioner's return for the 1987 year reflects that his $123,801 loss from his stock activity was fully offset by his wages and other income.

Petitioner contends that he sustained the NOL from his stock activity in which he was either a dealer or a trader. Respondent contends that petitioner is not entitled to the NOL deduction claimed for 1988 because he presented no evidence to substantiate the claimed NOL carryover from 1987. We agree with respondent.

We have found that petitioner was not a dealer or a trader but an investor for the 1987, 1988, and 1989 years. Consequently, petitioner's losses from his stock activity were capital losses. Petitioner's entry on his 1987 return is not evidence that a loss has been incurred. See Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979); Roberts v. Commissioner, 62 T.C. 834, 837 (1974). Petitioner has failed to sustain his burden of proving that he is entitled to an NOL deduction for 1988. Consequently, respondent's disallowance is sustained.

4. Charitable Contribution Deduction

We must consider whether petitioner is entitled to additional charitable contribution deductions in the amounts of $500 and $750 for the 1987 and 1988 taxable years, respectively. Petitioner deducted $2,000 and $1,500, respectively, for contributions made by cash or check on his 1987 and 1988 income tax returns. Respondent allowed charitable contributions of $1,500 and $750 for 1987 and 1988, respectively. Respondent contends that petitioner substantiated only $25 of his charitable contributions for 1987 and none for 1988. Petitioner argues that, although he does not have the canceled checks or supporting documentation, the claimed amounts are deductible as they are based on his estimates from past years' patterns of charitable giving.

In general, a taxpayer is entitled to deduct charitable contribution payments made during the taxable year to or for the

use of certain types of organizations. Sec. 170(a)(1), (c). A taxpayer is required to substantiate charitable deductions; records must be maintained. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. Petitioner testified that he cannot substantiate the claimed amounts because his former spouse took his tax records when they divorced, including his canceled checks and bank statements. We find petitioner's argument unpersuasive. Petitioner has failed to substantiate his charitable contributions. Respondent's determination with respect to this issue is sustained.

5. <u>Alimony Deduction</u>

We must decide whether petitioner is entitled to a deduction of $4,903 for alimony paid during 1988. Petitioner's wife filed for divorce on August 26, 1988. On December 12, 1988, a hearing was held with respect to the pending divorce action before the Master of Chancery for Howard County, Maryland. Based upon the record established at that hearing, the Circuit Court for Howard County entered a pendente lite support order (ordering support payments during a pending suit for divorce, hereinafter the order) on January 23, 1989. The divorce became final in April 1990. Petitioner substantiated that he made $2,903 in support payments during 1988. Petitioner also claimed as alimony $2,000 that his former spouse withdrew from their joint savings account in 1988. Petitioner argues that he is entitled to deduct this amount pursuant to the order. We disagree.

Section 215(a) permits a deduction for the payment of alimony during a taxable year. Section 215(b) defines alimony as alimony which is includable in the gross income of the recipient under section 71. Section 71(b)(1) defines alimony or separate maintenance as any cash payment meeting the four criteria provided in subparagraphs (A) through (D) of that section. Accordingly, if any portion of the payments made by petitioner fails to meet the four enumerated criteria, that portion is not alimony and is thus not deductible by petitioner.

Respondent contends that the requirement of subparagraph (A) has not been satisfied. Section 71(b)(1)(A) defines alimony or separate maintenance payments as any payment made in cash if such payment is received by a spouse under a divorce or separation instrument. "Divorce or separation instrument" is defined in section 71(b)(2) as a decree or written instrument meeting any of the requirements in subparagraphs (A), (B), or (C). The order issued by the circuit court is a decree ordering petitioner to make support payments to his wife. Sec. 71(b)(2)(C). However, payments made prior to the entry of a support decree are not deductible under section 215. Healey v. Commissioner, 54 T.C. 1702 (1970), affd. without published opinion, 71-2 USTC par. 9536, 28 AFTR 2d 71-5217 (4th Cir. 1971); Jachym v. Commissioner, T.C. Memo. 1984-181; see also White v. Commissioner, T.C. Memo. 1984-65. There is no evidence in the record of any other instrument satisfying the requirements of section 71(b)(2).

These payments, therefore, are considered voluntary in nature as they were not mandated by a qualifying divorce instrument at the time they were made. Thus, they do not qualify as alimony for Federal income tax purposes, even though the instrument is made retroactive to the date of the earlier payments. See, e.g., White v. Commissioner, supra. All of the claimed alimony payments were made before the circuit court entered the order. Accordingly, the payments are not deductible, and we sustain respondent's determination with respect to this issue.

6. Delinquency Penalty

Petitioner filed Federal income tax returns for the taxable years 1987 and 1988 on September 5, 1991. Respondent determined that petitioner is liable for an addition to tax under section 6651(a)(1) because he failed to timely file his 1987 and 1988 Federal income tax returns or show that his delinquent filing was due to reasonable cause.

Section 6651(a)(1) imposes a monthly charge equal to 5 percent of the amount of tax that should have been shown on the return, subject to a maximum charge of 25 percent. The addition to tax imposed under section 6651(a)(1) does not apply if petitioner can prove that his failure to file was (1) due to reasonable cause, and (2) not due to willful neglect. Sec. 6651(a); United States v. Boyle, 469 U.S. 241, 245 (1985). A failure to file timely a Federal income tax return is due to reasonable cause if the taxpayer exercised ordinary business care

and prudence and, nevertheless, was unable to file the return within the prescribed time. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Willful neglect means a conscious, intentional failure, or reckless indifference. United States v. Boyle, supra at 245.

Petitioner's 1987 and 1988 Federal income tax returns were due, with extensions, on August 15, 1988, and August 15, 1989, respectively. Petitioner filed his 1987 and 1988 returns on September 5, 1991, in response to an inquiry from the Collection Division of the Internal Revenue Service, well after the due dates. Petitioner argues that he could not have filed his 1987 and 1988 returns on time because he was involved in an adversarial divorce and that his wife had possession of his tax records. Petitioner also argues that since he estimated that he was due a refund for the 1987 and 1988 taxable years, it was not a priority for him to file these returns.

We are not persuaded by petitioner's arguments. The unavailability of records does not necessarily establish reasonable cause for failure to file timely. See Crocker v. Commissioner, 92 T.C. 899 (1989) (delinquency penalty upheld where petitioner did not show what documents were still needed or what actions were taken to obtain such documents). An individual must file a timely return based on the best information available; he may then file an amended return, if necessary. Estate of Vriniotis v. Commissioner, 79 T.C. 298, 311 (1982).

Petitioner testified that he could have secured all of the necessary information to prepare and timely file his 1987 and 1988 returns from other sources.  Petitioner has failed to prove that his untimely filing was due to reasonable cause and not due to willful neglect.  Accordingly, we sustain respondent's determination that petitioner is liable for the addition to tax under section 6651(a)(1) for 1987 and 1988.

We have considered all arguments made by petitioner and, to the extent not addressed above, find them to be without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.