T.C. Memo. 1998-2

UNITED STATES TAX COURT

WILLIAM J. WELLS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5458-94.                     Filed January 5, 1998.

<u>Joyce J. Pearson</u>, for petitioner.

<u>Linas N. Udrys</u>, for respondent.

MEMORANDUM OPINION

NAMEROFF, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7443A(b)(3)[1] and Rules 180, 181, and 182.  Respondent determined deficiencies in petitioner's 1990 and 1991 Federal income tax in the amounts of $6,513 and $8,043,

---

[1]  All section references are to the Internal Revenue Code in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

respectively. The sole issue for decision is whether amounts paid as "family support" pursuant to a State court decree were alimony payments and therefore deductible by petitioner under section 215.

### Background

Some of the facts have been stipulated, and they are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time he filed his petition, petitioner resided in Irvine, California.

Petitioner and his former wife, Karen Wells (Ms. Wells), were married on August 2, 1980. They have two children from the marriage: Christopher, born July 24, 1982, and Lindsey, born August 28, 1985. On June 1, 1990, the Superior Court of California, Orange County (Superior Court), entered a Judgment of dissolution of marriage effective August 15, 1990. Christopher and Lindsey resided with Ms. Wells during the years at issue.

As part of their divorce, petitioner and Ms. Wells entered into a Marital Termination Agreement (MTA) on February 5, 1990. They retained Attorney Richard E. Young (Mr. Young) to draft and effectuate the MTA without contest. Although Ms. Wells initially approached Mr. Young for assistance with the divorce, Mr. Young served as an impartial mediator in negotiating and drafting the MTA for both petitioner and Ms. Wells. Petitioner and Ms. Wells

understood that payments to be made under the MTA were to provide financial support for Ms. Wells and the children.

The Superior Court approved the MTA and made it an Order of the Court. The relevant portions of the Superior Court's order are recited below:[2]

14. CHILD CUSTODY AND SUPPORT:

A. SPOUSAL SUPPORT Neither party shall pay the other any amount for support, however, the Court will reserve jurisdiction over the right to award spousal support until December 26, 1995, at which time the right to grant spousal support for either party shall terminate without further order of the court. If you fail to pay any court ordered child support, an assignment of your wages will be obtained without further notice to you.

* * *

C. FAMILY SUPPORT ORDER:
* * * [Petitioner] shall pay to * * * [Ms. Wells] as and for the FAMILY SUPPORT ORDER sum of $2,000.00 per month, until the sale of their house, one and a half (1 1/2) months after the sale of the house, the FAMILY SUPPORT ORDER shall increase to the sum of $3,238.00 per month, payable one-half on the first and one-half of [sic] the fifteenth day of each month, commencing March 1, 1990, and continuing thereafter until further Order of the Court or until the child marries, dies, is emancipated, reaches 19 or reaches 18 and is not a full-time high school student residing with a parent, whichever first occurs. * * * [Ms. Wells] shall immediately report to * * * [petitioner] the name, address and phone number of her Employer and

---

[2] California recognizes three forms of support: Child, spousal, and family. See Cal. Fam. Code sec. 150 (West 1994). We note that the Cal. Fam. Code, enacted in 1992 and operative from Jan. 1, 1994, was derived from the family law provisions of the Cal. Civ. Code, Code of Civ. Proc., Evid. Code, and Prob. Code. The relevant portions of the sections cited herein were adopted as the Cal. Fam. Code without substantial changes.

her monthly income.  Any increase in income shall be grounds for a reevaluation of * * * [petitioner's] obligation for support.  Further, the termination of the mutual obligation of spousal support, shall be further grounds for reevaluation of the support orders.

On September 19, 1990, petitioner and Ms. Wells, through a Memorandum of Agreement, modified the MTA.  The relevant portions of that agreement (Modified MTA) are set out below:

NOW, THEREFORE, * * * [Ms. Wells and petitioner] do hereby agree to modify the Marital Termination Agreement of February 5, 1990, to the extent and only to the extent as herein detailed.  Said order shall be modified with respect to paragraph numbered (14) subsection (c) thereof, as follows:

a.  * * * [Petitioner] shall pay to * * * [Ms. Wells] as and for family support order the sum of $2,600.00 per month, payable in the sum of $1,300.00 on the 15th day of each month and $1,300.00 on the 1st day of each month, commencing October 15, 1990.

b.  That portion of paragraph numbered (14) subsection (c) of the Marital Termination Agreement above referred to and which reflects that "one and a half (1 1/2) months after the sale of the house, the family support order shall increase to the sum of $3,238.00 per month." is hereby, by agreement of the parties, declared of no force and effect.

* * *

e.  * * * [Ms. Wells] agrees to notify * * * [petitioner] at the commencement of full-time employment by * * * [Ms. Wells] and to notify * * * [petitioner] of the name and address of her employer and her salary structure all at such time as * * * [Ms. Wells] commences full-time employment.

Petitioner and respondent have stipulated that petitioner had made the payments at issue pursuant to this Modified MTA. They also have stipulated these additional facts:

During the taxable year 1990, commencing January 1, 1990, through October 15, 1990, petitioner paid Karen Wells $2,000.00 per month as "family support" pursuant to the MTA as modified.

Commencing October 15, 1990, and continuing through all of the taxable year 1991, petitioner paid Karen Wells $2,600.00 per month as "family support" pursuant to the MTA as modified. For the month of October, 1990, petitioner made one payment in the amount of $1,000.00 and one payment in the amount of $1,300.00.

On July 11, 1995, petitioner filed a motion in the Superior Court seeking to reform the Modified MTA. Through this motion, petitioner moved for that court "to properly interpret the meaning and intent of the family support, child support and spousal support paragraphs in the parties [sic] judgment of dissolution filed June 1, 1990." On August 16, 1996, the Superior Court, by way of an order, made a factual finding that the payments "were intended to be as separate allocated sums of child support and spousal support." The Superior Court, however, did not specifically delineate the amounts for alimony and child support.

During the calendar years 1990 and 1991, petitioner paid Ms. Wells family support of $25,500 and $31,200, respectively. On his 1990 and 1991 Federal income tax returns, petitioner claimed alimony deductions of $22,452 and $27,468, respectively, which represented approximately 88 percent of petitioner's total family support payments during each year. Petitioner derived the above ratio using figures that were reflected in a "Dissomaster"

report.[3]  The "Dissomaster" report indicated that petitioner was to pay family support of $3,238 per month, of which $2,857 was to be for spousal support and $381 was to be for child support.[4] Mr. Young, allegedly, relied upon this report when drafting the MTA.  Petitioner also claimed dependency exemption deductions for Christopher and Lindsey on his 1990 and 1991 tax returns.  In the notice of deficiency, respondent disallowed petitioner's alimony deductions.

## Discussion

Section 215(a) allows a deduction for the payment of alimony during a taxable year.  Section 215(b) defines alimony as payment that is includable in the gross income of the recipient under section 71.  Section 71(b) provides a four-step inquiry for determining whether a cash payment is alimony.  Section 71(b) provides:

>     (1) In general.--The term "alimony or separate maintenance payment" means any payment in cash if--
>
>         (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>
>         (B) the divorce or separation instrument does not designate such payment as a payment which is not includable in gross income under this section

---

[3]  A "Dissomaster" is a commercially available computer program used by family law practitioners to compute support payment amounts based on income and other factors.

[4]  $2,857 divided by $3,238 equals approximately 88 percent.

and not allowable as a deduction under section 215,

(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

If any portion of the payments made by petitioner fails to meet any one of the four enumerated criteria, that portion is not alimony and thus is not deductible by petitioner.

Moreover, payments made for child support are not deductible under section 215. Sec. 71(c). Child support is that part of the payment which the terms of the divorce instrument fixed as payable for the support of the children of the payor spouse. Sec. 71(c)(1). An amount is treated as fixed under section 71(c)(1) if it will be reduced on the happening of a contingency specified in the divorce instrument relating to a child (such as attaining a specified age, marrying, dying, leaving school, or a similar contingency) or at a time which can clearly be associated with a contingency related to the child. Sec. 71(c)(2).

Respondent argues that the family support payments made by petitioner fail to qualify as deductible alimony. In making that

determination, respondent focuses on when the payments at issue were scheduled to terminate.  First, respondent contends that the payments made by petitioner fail to qualify as alimony because the family support payments were not set to terminate upon the death of Ms. Wells, as required by section 71(b)(1)(D).  In addition, respondent, relying on section 71(c)(2), asserts that the payments were nondeductible child support payments, because the Modified MTA made the "cessation of the payments contingent upon events which are associated with petitioner's children."

Petitioner, on the other hand, argues that the payments at issue were deductible alimony.  Petitioner asserts that his payments satisfied section 71(b)(1)(D) because, under California law, the obligation for support terminates automatically upon the death of either party or the remarriage of the recipient.  Moreover, petitioner contends that his payments met the definition of alimony because the Modified MTA failed to fix any amount as child support, as required by section 71(c)(2) and Commissioner v. Lester, 366 U.S. 299 (1961).

Evidentiary Matters

As a preliminary matter, we must make rulings on evidentiary matters.  Respondent moved, pursuant to Rule 50, for the Court to "exclude all extrinsic evidence, including, but not limited to, the testimony of petitioner and the testimony of * * * [Mr. Young] which pertains to the intended character and/or amount of

support payments made by petitioner, from evidence".  Respondent

also moved to exclude from evidence:  (1) The August 16, 1996,

order of the Superior Court, in which the court attempted to

clarify the character of the family support payments; and (2) the

"Dissomaster" report.

Petitioner introduced the above evidence to establish that

88 percent of the family support payments represented alimony.

Respondent objects to the introduction of the evidence, relying

upon the parol evidence rule and the Supreme Court's holding in

Commissioner v. Lester, supra.[5]  In essence, respondent asserts

that since the MTA clearly characterizes the full amount of the

family support payments as child support pursuant to section

71(c)(2), the introduction of extrinsic evidence is

inappropriate.  We reserved a final ruling as to the

admissibility of the evidence and tentatively received the

evidence offered.  Respondent renewed the objection at trial and

again on brief.

This Court has held, relying on the holding in Lester, that

parol and other extrinsic evidence is inadmissible to explain the

intent, motives, and conduct of parties where a clear and

---

[5]  Respondent also objects to the "Dissomaster" report on
the basis of relevance, asserting that at no time during the
relevant period did petitioner pay Ms. Wells $3,238 per month,
the amount indicated in the report.  While it is true that
petitioner paid less than $3,238 per month, the objection is
overruled, as it goes to the weight of the evidence rather than
to its admissibility.

unambiguous written separation agreement specifically and unequivocally fixes periodic payments as child support. Estate of Craft v. Commissioner, 68 T.C. 249, 263-264 (1977), affd. 608 F.2d 240 (5th Cir. 1979); Grummer v. Commissioner, 46 T.C. 674, 680 (1966). Conversely, the introduction of extrinsic evidence is permitted in cases where documents contain inconsistencies and/or ambiguities.

The documents before us are riddled with inconsistency and ambiguity. For example, paragraph 14C. lists several contingencies relating to "the child". This singular reference is perplexing as petitioner and Ms. Wells have two children from their marriage, and the document does not reveal whether these contingencies related to one or both of the children.

The fact that petitioner and Ms. Wells modified the MTA adds complexity to our analysis. The Modified MTA states that the MTA is modified "to the extent and only to the extent as herein detailed." In modifying the first sentence of paragraph 14C., the Modified MTA changes the monthly amount of family support and specifically eliminates the portion of the sentence relating to the sale of the house. The Modified MTA, however, is silent as to the contingencies relating to "the child", and there appears to be uncertainty as to whether the contingencies were intended to have survived the modification.

Respondent asserts that Grummer v. Commissioner, supra, is indistinguishable from this case. We disagree. In Grummer, this Court, in excluding extrinsic evidence, found that there was no ambiguity in the language of the agreement and that "The parties stated with clarity that the periodic payments were to be treated solely as support for the children." Id. at 679. No such clarity, however, is present in the documents before us. Accordingly, we deny respondent's motion in limine and overrule all related subsequent objections.

Petitioner, on the other hand, raises a relevancy objection to the introduction of a Minute Order of the Superior Court filed May 17, 1995. The order required petitioner to pay Ms. Wells $2,222 per month as "child support" and $275 per month as alimony, "COMMENCING FORTHWITH" from the date the Minute Order was filed. We sustain petitioner's objection. This order modified petitioner's payments beginning with June 1, 1995, and thereafter and has no bearing on petitioner's payments made during taxable years 1990 and 1991. The order, in stating the "COURT RESERVES ISSUE OF RETROACTIVITY AS TO COMMENCEMENT OF SUPPORT ORDERS", implies that its effectiveness is limited to modifying petitioner's future support obligations only.

Divorce or Separation Instrument

While respondent does not question whether, under section 71(b)(1)(A), petitioner had made payments pursuant to a divorce

or separation instrument, we believe that this issue deserves our consideration.  Section 71(b)(2) defines the term "divorce or separation instrument" as follows:

> (A) a decree of divorce or separate maintenance or a written instrument incident to such a decree,
>
> (B) a written separation agreement, or
>
> (C) a decree (not described in subparagraph (A)) requiring a spouse to make payments for the support or maintenance of the other spouse.

The term "written separation agreement" is not comprehensively defined by the Code, the legislative history, or applicable regulations.  Bogard v. Commissioner, 59 T.C. 97, 100 (1972).  We have held, however, that the existence of a clear, written statement of the terms of support for separated parties is sufficient to satisfy section 71(b)(2)(B).  Id. at 101.

The parties have stipulated that petitioner had made the payments at issue pursuant to the Modified MTA.  Ordinarily, a stipulation of fact is binding on the parties, and we are constrained to enforce it.  Rule 91.  We may, however, modify or set aside a stipulation that is clearly contrary to the facts revealed on the record.  Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195 (1989).  The record plainly demonstrates that the January 1 through October 14, 1990, payments, were not made pursuant to the Modified MTA.  We, therefore, shall set aside the above stipulation pertaining to those payments.  The stipulation

relating to the October 15, 1990, through December 31, 1991, payments, however, shall not be disturbed.

In determining whether petitioner's payments were made pursuant to a "written separation instrument", we need only look to when the payments were made. We consider those payments made pursuant to the MTA (whether made before or after the Superior Court adopted the MTA as an Order of the Court) and Modified MTA as having been made pursuant to written separation instruments, because those instruments satisfy the requirements stated in section 71(b)(2). On the other hand, those payments for the January 1 through February 4, 1990, period (about $2,000) were not made pursuant to any instrument and, therefore, do not satisfy the section 71(b)(1)(A) requirement.

Termination Upon Death

Keeping in mind that petitioner made payments pursuant to two separate instruments (i.e., those made pursuant to the MTA and those made pursuant to the Modified MTA),[6] we now must decide whether, under section 71(b)(1)(D), petitioner's payments were set to terminate upon the death of Ms. Wells. Neither the MTA nor the Modified MTA specifically states whether the above was to occur. We, therefore, must look to California law to determine whether a postdeath legal obligation existed, as State law

---

[6] The following discussion pertains only to those payments made for the period beginning with Feb. 5, 1990.

determines various rights of the parties.  Sampson v. Commissioner, 81 T.C. 614, 618 (1983), affd. without published opinion 829 F.2d 39 (6th Cir. 1987).

California Family Code section 4337 (West 1994) provides that, "Except as otherwise agreed by the parties in writing, the obligation of a party under an order for the support of the other party terminates upon the death of either party or the remarriage of the other party."  (Emphasis added.)  Under California law, an order for "spousal support" means an order for the support of the spouse based upon the standard of living established during marriage.  On the other hand, "child support", once ordered by a court, survives the death of the payee custodial parent and continues as an obligation of the payor noncustodial parent.  In re Marriage of McCann, 32 Cal. Rptr. 2d 639 (Ct. App. 1994); In re Marriage of Gregory, 281 Cal. Rptr. 188 (Ct. App. 1991).  The third category, "family support", is an unallocated combination of "child support" and "spousal support".  Cal. Fam. Code secs. 92, 4330 (West 1994).

Petitioner argues that because family support is an unallocated combination of child support and spousal support, he must prevail since spousal support terminates at the death of the payee.  We believe the converse argument is equally persuasive (i.e., that the payments are not alimony because child support

survives the death of the custodial parent), and we refuse to accept his conclusion.

Upon reviewing the relevant evidence before us, we hold that petitioner's payments, under both instruments, do not meet the section 71(b)(1)(D) requirement. Contrary to petitioner's contention, California Family Code section 4337 (West 1994) does not assist him in satisfying that provision.

While the MTA is not a model of clarity, we are convinced that the parties intended the payments to terminate, on a pro rata basis, as each child "marries, dies, is emancipated, reaches 19 or reaches 18 and is not a full-time high school student residing with a parent". The reference to "the child" was merely a scrivener's error that was not caught by Mr. Young or his clients. Thus, both petitioner and Ms. Wells had "otherwise agreed in writing" to terminate the family support payments at some point other than the death of the payee spouse. In effect, they had agreed that the payments were to continue until one or more of the specified events occurred with respect to the children, even if Ms. Wells were to die beforehand. Thus, the payments would not terminate on her death.

Turning now to the Modified MTA, it does not make any difference whether we accept respondent's interpretation of that document (i.e., that paragraph 14C. required payment of $2,600 per month, terminating pro rata as each child marries, dies,

etc.) or petitioner's (i.e., that paragraph 14C. required family support payments that were not subject to any of the above events). If we concur with respondent, then both petitioner and Ms. Wells had, once again, "otherwise agreed in writing" and the result would mirror the above.[7]

On the other hand, even if we were to concur with petitioner's interpretation of the Modified MTA, he still would not prevail. We are unaware of any California statute that terminates family support obligations upon the death of the payee spouse. California Family Code section 4337 pertains only to spousal support orders and, in our estimation, does not address family support payments. Assuming a "worst case scenario" (i.e., custodial parent dies and custody is awarded to someone other than the surviving spouse), we cannot believe that California law would permit the surviving parent to avoid any further support obligations. See Murphy v. Commissioner, T.C. Memo. 1996-258. Accordingly, respondent's determination shall be sustained.

To reflect the foregoing,

<u>Respondent's motion in limine will be denied and decision will be entered for respondent</u>.

---

[7] A holding in accordance with respondent's interpretation, however, would require us to find that petitioner and Ms. Wells continued to ignore the patent ambiguity of the one-child provision.