T.C. Summary Opinion 2006-110

UNITED STATES TAX COURT

JOHN R. RAY IV AND ROCHELLE L. RAY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

JENNIE S. RAY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 5316-05S, 7558-05S.     Filed July 17, 2006.

<u>Juan F. Vasquez, Jr.</u>, for petitioners in docket No. 5316-05S.

<u>Peter A. Lowy</u>, for petitioner in docket No. 7558-05S.

<u>Gordon P. Sanz</u>, for respondent.

DEAN, <u>Special Trial Judge</u>:  These consolidated cases were heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petitions were filed. Unless otherwise indicated, subsequent section references are to the Internal Revenue Code as in effect for the year at issue, and

all Rule references are to the Tax Court Rules of Practice and Procedure. The decisions to be entered are not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined for 2002 a deficiency in the Federal income tax of petitioners, John R. Ray IV (Mr. Ray) and Rochelle L. Ray, in the amount of $16,210. Respondent also determined for 2002 a deficiency in the Federal income tax of petitioner Jennie S. Ray, now known as Jennie S. Bader (Ms. Bader), in the amount of $11,391.

These cases have been consolidated for purposes of trial, briefing, and opinion, because they involve common questions of fact and law arising from the separation and divorce of Mr. Ray and Ms. Bader.

The issue for decision is whether certain payments made by Mr. Ray to Ms. Bader in 2002 constitute alimony payments within the meaning of section 71(b)(1) that are deductible by Mr. Ray under section 215(a) and that are includable in the income of Ms. Bader under section 71(a).

## Background

The stipulation of facts and the exhibits received into evidence are incorporated herein by reference. When the petitions in these cases were filed, Mr. Ray resided in Spring, Texas, and Ms. Bader resided in Tomball, Texas.

Mr. Ray and Ms. Bader were married on July 23, 1988. They had three children from the marriage. They separated on July 17, 2001, after which the children resided with Ms. Bader.

During their separation, Mr. Ray paid to Ms. Bader approximately $6,000 to $7,000 per month with the understanding that the funds would be used for the financial support of Ms. Bader and the three minor children. Ms. Bader acknowledged that Mr. Ray paid "what he felt was fair", and the amount of the monthly payments varied accordingly. Mr. Ray conceded that any support payments made prior to March 13, 2002, were voluntary and do not constitute alimony for Federal income tax purposes.

State Court Proceedings

On July 25, 2001, Ms. Bader filed an Original Petition for Divorce in the District Court of Harris County, Texas (State court).

The State court, pursuant to an agreed order submitted by the parties' divorce counsel, appointed an arbitrator to resolve all pending issues relating to the dissolution of the marriage and the children. An arbitration was scheduled for March 13, 2002 (March 13 arbitration). A week prior to arbitration, Mr. Ray's divorce counsel submitted to the arbitrator a Mediation Memorandum to brief her on the background and the issues to be resolved.

On the arbitration date, Mr. Ray and Ms. Bader reached an agreement on all outstanding issues, and the terms of the divorce were recited into the record by their respective divorce counsel.

Both Mr. Ray and Ms. Bader testified under oath that they understood and agreed to the terms recited therein. A transcript of the March 13 arbitration was prepared and was filed with the State court as "The Arbitration Agreement Statement of Facts Between Jennie Sophia Ray and John Robert Ray, IV March 13, 2002" (arbitration agreement). Under the arbitration agreement, Mr. Ray agreed to pay to Ms. Bader the sum of $20,000 in alimony, payable at the rate of $4,000 per month, beginning in April of 2002 and terminating in August of 2002.

On April 22, 2002, the State court entered an Agreed Final Decree of Divorce (divorce decree), dissolving the marriage of Mr. Ray and Ms. Bader. Consistent with the arbitration agreement, section 1.2 of the divorce decree obligated Mr. Ray to pay a total of $20,000 in alimony, to commence on April 1, 2002. Section 1.2 of the divorce decree provides:

> 1.2 <u>Terms, Conditions, and Contingencies</u>
>
> Amount – JOHN ROBERT RAY, IV will pay to JENNIE SOPHIA RAY $4,000.00 per month as alimony. These payments will be payable beginning April 1, 2002, on or before the 1st day of each month, beginning on the first such day after the date of divorce in this case.
>
> Term – The payments will end after the payment of $20,000.00 total, with the last payment being due on August 1, 2002, providing all payments have been made.

Payments Made by Mr. Ray to Ms. Bader

The arbitration agreement did not require alimony payments to begin until April of 2002. The divorce decree, likewise, did not require alimony payments to begin until April 1, 2002. Nevertheless, at the end of March of 2002, Mr. Ray made a payment to Ms. Bader--check No. 1095, dated March 22, 2002, in the amount of $3,000.

During the examination of his return by respondent, Mr. Ray substantiated that he paid alimony of $16,000 between April 1 and August 1, 2002. All of the payments were made by personal checks, and some of the checks included both alimony and child support. The final payment was check No. 1219, which bore the notation of "Alimony-Final". A summary of the substantiated alimony payments follows:

| Check No. | 2002 Date | Amount | Alimony | Child Support |
|---|---|---|---|---|
| 1109 | Apr. 8 | $3,000 | $2,000 | $1,000 |
| 1114 | Apr. 21 | 3,000 | 2,000 | 1,000 |
| 1129 | May 5 | 3,000 | 2,000 | 1,000 |
| 1161 | June 5 | 2,000[1] | 2,000 | -- |
| 1162 | June 6 | 2,000 | 2,000 | -- |
| 1177 | June 21 | 2,000 | 2,000 | -- |
| 1199 | July 8 | 2,000 | 2,000 | -- |
| 1219 | July 24 | 2,000 | 2,000 | -- |

The 2002 Deficiencies

Mr. Ray married his current wife, Rochelle Ray, in 2002. They jointly filed a 2002 Form 1040, U.S. Individual Income Tax Return, prepared by Ernst and Young LLP, on which they claimed an

[1]Although the exhibits prepared by Mr. Ray indicated that check No. 1161 was a check for $3,000, the bank statement shows that the correct amount is $2,000.

alimony deduction of $41,000.  Ms. Bader filed a 2002 Form 1040, U.S. Individual Income Tax Return, prepared by a certified public accountant, on which she failed to report any alimony income.

## Discussion

Mr. Ray and Ms. Bader bear the burden of proving that respondent's determinations in the respective notices are erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[2]

### I.   Parties' Arguments

In the role of a stakeholder, respondent issued separate statutory notices of deficiency to Mr. Ray and Ms. Bader, addressing their inconsistent treatment of the payments. Respondent disallowed Mr. Ray's alimony deduction of $41,000 based on the determination that Mr. Ray failed to substantiate that he actually paid $41,000 or that such amount was alimony.  Respondent determined that Ms. Bader received alimony of $41,000 in 2002 and adjusted her income accordingly.

Mr. Ray alleges that the claimed deduction of $41,000 represented the sum of all the payments made by him in 2002.  He now agrees that any payments made prior to the March 13

---

[2]With respect to any factual issue relevant to ascertaining the liability of the taxpayer, sec. 7491(a) shifts the burden of proof to the Commissioner in certain situations.  The resolution of the factual issue in this case does not depend upon which party has the burden of proof.  Rather, the factual issue is decided upon the basis of the stipulated facts and the documents contained in the record.  Therefore, sec. 7491(a) does not apply.

arbitration were voluntary and did not constitute alimony for Federal income tax purposes. Subsequent to March 13, 2002, Mr. Ray wrote to Ms. Bader a total of 10 checks, totaling $23,000 of which he states that he intended $20,000 to be alimony and the remainder to be child support. Of the $20,000, Mr. Ray substantiated that $16,000 was alimony. Ms. Bader agrees that she received alimony of $16,000 in 2002 and has paid Federal income tax on that amount.

II. Issues Raised

At issue in this case is whether the remaining $4,000 constitutes alimony within the meaning of section 71(b)(1) that is deductible by Mr. Ray under section 215(a) and that is includable in the income of Ms. Bader under section 71(a).

The $4,000 at issue is represented by three checks: (1) $2,000 is attributable to check No. 1095, dated March 22, 2002, (2) $1,000 is attributable to check No. 1129, dated May 5, 2002, and (3) $1,000 is attributable to check No. 1148, dated May 20, 2002.

Check No. 1095 was a check for $3,000. Of that amount, Mr. Ray claims that he intended $2,000 to be his initial alimony payment (Initial Payment) and the remainder to be child support. Mr. Ray testified that he made the Initial Payment prior to the prescribed date of April 1, 2002, because he assumed that the divorce was final after the March 13 arbitration. He also assumed

that any payments made thereafter would be in furtherance of the divorce.

The Initial Payment was made after the parties entered into the arbitration agreement, but before April 1, 2002.  This raises two legal issues:  (1) Whether the arbitration agreement is a "divorce or separation instrument" as defined by section 71(b)(2), and (2) whether the Initial Payment was made "under" a divorce or separation instrument as required by section 71(b)(1).

As for check Nos. 1129 and 1148, Mr. Ray testified that, subsequent to the examination of his return, he discovered additional documentation to show that the two checks represent alimony that was not previously accounted for.  He claimed that the checks, together with the documentation previously submitted to respondent, show that he paid a total of $18,000 in alimony between April 1 and August 1, 2002, or $2,000 more than previously substantiated.

Mr. Ray argues that check No. 1129 should be recharacterized to reflect that the entire check amount of $3,000, instead of only $2,000, was alimony.  Mr. Ray further argues that check No. 1148, in the amount of $1,000, represented alimony, but it was not accounted for, because the check was not discovered until after the examination.

Check Nos. 1129 and 1148 raise an issue of fact.  There is no dispute that these payments were made under the divorce decree.

Therefore, the only dispute is whether the $2,000 was paid as alimony or child support.

Ms. Bader contends that she received alimony of only $16,000 in 2002. She takes the position that any payments in excess of $16,000 were either voluntary or child support and did not constitute alimony within the meaning of section 71(b)(1).

A.   Whether the Initial Payment Qualifies as Alimony Under Section 71(b)

Section 215(a) allows a deduction for the payment of alimony during a taxable year. Section 215(b) defines alimony as a payment that is includable in the gross income of the recipient under section 71. Section 71(a) provides that gross income includes amounts received as alimony or separate maintenance payments. Under section 71(b)(1), the term "alimony or separate maintenance payment" means any cash payment if--

    (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

    (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

    (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

    (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

The Initial Payment satisfies all of the requirements under section 71(b)(1)(B)-(D).  In dispute is section 71(b)(1)(A), specifically:  (1) Whether the arbitration agreement was a "divorce or separation instrument", and if yes, (2) whether the Initial Payment was received by Ms. Bader "under" a divorce or separation instrument.

Whether the Arbitration Agreement Was a
"Divorce or Separation Instrument"

Section 71(b) defines the term "divorce or separation instrument" as:

SEC. 71(b).  Alimony or Separate Maintenance Payments Defined.--For purposes of this section–

  *          *          *          *          *          *          *

(2) Divorce or separation instrument.--The term "divorce or separation instrument" means-

(A) a decree of divorce or separate maintenance or a written instrument incident to such a decree,

(B) a written separation agreement, or

(C) a decree (not described in subparagraph (A)) requiring a spouse to make payments for the support or maintenance of the other spouse.

Mr. Ray contends that the arbitration agreement is a "decree of divorce", because the arbitration agreement merged with the divorce decree once the decree was filed with the State court on April 12, 2002.  The merger clause under the divorce decree provides for a merger of a "mediation agreement" into a final decree of divorce:

This Final Decree of Divorce is stipulated to represent a merger of a mediation agreement between the parties. To the extent there exist any differences between the mediation agreement and this Final Decree of Divorce, this Final Decree of Divorce shall control in all instances.

The parties used the terms "mediation" and "arbitration" interchangeably when referring to the March 13 arbitration. For example, the memorandum that Mr. Ray's divorce counsel prepared in advance of the March 13 arbitration was labeled "Mediation Memorandum" rather than "Arbitration Memorandum". Although the arbitration agreement was not labeled as the "mediation agreement", both parties intended it as such.

Merger, with respect to the law of contracts under Texas law, refers to the extinguishment of one contract by its absorption into another contract and is largely a matter of the intention of the parties. Smith v. Smith, 794 S.W.2d 823, 827-828 (Tex. App. 1990). Before one contract is merged into another, the last contract must be between the same parties as the first, must embrace the same subject matter, and must have been so intended by the parties. Id. at 828.

When an agreement is incorporated into a divorce decree, the decree is a consent judgment. McGuire v. McGuire, 4 S.W.3d 382, 386 (Tex. App. 1999); Rivera v. Office of Attorney General, 960 S.W.2d 280, 283 (Tex. App. 1997). Once the court approves the agreement and makes it a part of the judgment, the agreement is no

longer merely a contract between private individuals but is the judgment of the court.  McGuire v. McGuire, supra.

In this case, the arbitration agreement and the divorce decree were made between the same parties, embraced the same subject matter, ordered the same support amounts and payment schedule, and was intended by the parties to be incorporated into the divorce decree.  Under Texas law, the arbitration agreement became a part of the consent judgment once it was incorporated into the final divorce decree.  Therefore, by virtue of the merger, the arbitration agreement becomes an integrated part of the "divorce or separation instrument" within the meaning of section 71(b).

### Whether the Initial Payment Was Received "Under" a Divorce or Separation Instrument

The resolution of whether the Initial Payment was received "under" a divorce or separation instrument turns on the question of timing.  Both the arbitration agreement and the divorce decree (collectively, the qualifying divorce instrument) are explicit in their terms that alimony payments "will be payable beginning April 1, 2002".

Mr. Ray contends that his legal obligation was to pay alimony of $20,000.  He argues that so long as the sum of $20,000 was paid, it is irrelevant whether he commenced the alimony payments in March or in April of 2002.  Mr. Ray's argument ignores the question of the Initial Payment's timing.

On the other hand, the focus of Ms. Bader's argument is that the Initial Payment was made too early. She argues that the Initial Payment is not alimony because it was paid prior to the prescribed date of April 1, 2002. She further argues that Mr. Ray failed to produce any documentation that would authorize him to shift the Initial Payment into April, or to deem the Initial Payment alimony.

The obligation to make alimony payments must have been imposed by the decree itself. Healey v. Commissioner, 54 T.C. 1702, 1705-1706 (1970), affd. without published opinion 28 AFTR 2d 71-5217, 71-2 USTC par. 9536 (4th Cir. 1971); see Prince v. Commissioner, 66 T.C. 1058 (1976); Joslyn v. Commissioner, 23 T.C. 126, 133-134 (1954) (holding that payments that fell outside of the scope of a qualified divorce or separation instrument were not alimony), revd. in part and affd. in part on other grounds 230 F.2d 871 (7th Cir. 1956); Leventhal v. Commissioner, T.C. Memo. 2000-92 (same).

The qualifying divorce decree, from which Mr. Ray's alimony obligation arose, required alimony payments to commence on April 1, 2002. The Court must decide whether the Initial Payment fell outside of the scope of the qualifying divorce decree, because it was made prior to April 1, 2002. The Court holds that it does.

Under section 71(b)(1)(A), the Court has strictly construed the terms of the instrument in determining whether a payment has

been made "under" a qualified divorce or separation instrument. In Wells v. Commissioner, T.C. Memo. 1998-2, by the express terms of the court order, the taxpayer's legal obligation to pay alimony commenced on October 15, 1990. In determining whether the taxpayer's payments were made pursuant to a "written separation instrument", the Court looked to when the payments were made and concluded that all payments made from January 1 through October 14, 1990, were not made pursuant to a "written separation instrument". Id.

Similarly, in Abood v. Commissioner, T.C. Memo. 1990-453, by the express terms of the court order, the taxpayer's obligation to pay alimony terminated on June 1, 1985. The Court held that any payments made thereafter were purely voluntary and hence did not qualify as alimony under sections 71(a) and 215(a). Id.; see also Serednesky v. Commissioner, T.C. Memo. 1993-566 (holding that taxpayer may not deduct rental payments made on behalf of his former wife as alimony, because the divorce judgment specifically required him to provide "housing").

Mr. Ray testified that he was told that the divorce was final after the March 13 arbitration and that he understood this to mean that he had a choice of when to make the first alimony payment. Mr. Ray chose to make the Initial Payment on March 22, 2002, because he wanted to "get it over with" and because it was

convenient for him to schedule his alimony payments on or immediately after his paydays. In 2002, Mr. Ray was paid by his employer on the 7th and the 21st of every month.

Regardless of when the divorce was ultimately finalized, Mr. Ray did not have an obligation to pay alimony under the qualifying divorce instrument until April 1, 2002. Where the payments were not mandated by a qualifying divorce or separation instrument at the time that they were made, the Court has construed those payments as voluntary. Meyer v. Commissioner, T.C. Memo. 2003-12; Hart v. Commissioner, T.C. Memo. 1997-11; Abood v. Commissioner, supra; Dean v. Commissioner, T.C. Memo. 1981-554. Voluntary payments do not qualify as alimony for Federal income tax purposes. See Meyer v. Commissioner, supra; Hart v. Commissioner, supra.

According to Mr. Ray, although the Initial Payment was made prior to April 1, 2002, he fully intended it to be a part of his $20,000 alimony obligation. The Court, however, has held that even if the payments made were no less in the nature of support than amounts paid under a divorce decree, those payments are not deductible unless there is some written agreement that creates a legally enforceable right to the support payments. Anderson v. Commissioner, T.C. Memo. 1999-53; Brooks v. Commissioner, T.C. Memo. 1983-304 (holding that the writing must provide adequate

proof of the existence of a contract between the parties and it must memorialize the parties' understanding regarding the terms of alimony payments).

Accordingly, the Initial Payment was not made "under" the qualifying divorce instrument because it was paid prior to April 1, 2002. Payments not received under a divorce decree or separation instrument are not deductible under section 215. Healey v. Commissioner, supra; Ali v. Commissioner, T.C. Memo. 2004-284; Meyer v. Commissioner, supra; Jachym v. Commissioner, T.C. Memo. 1984-181.

Based on the foregoing, the Court concludes that the Initial Payment was voluntary because it fell outside of the scope of the qualified divorce instrument, and it is therefore not alimony within the meaning of section 71(b)(1).

B. Whether Check Nos. 1129 and 1148 Were Alimony or Child Support Payments

The divorce decree obligated Mr. Ray to pay child support of $2,000 per month, with the first payment due and payable on April 1, 2002. All child support payments were required to be made through the Harris County Child Support Department (department) and remitted by the department to Ms. Bader.

During the examination, Mr. Ray and the examining agent assumed that any check in the amount of $3,000, dated after April 1, 2002, was intended as alimony of $2,000 and child support of

$1,000, unless Mr. Ray could prove otherwise.  Check No. 1129 falls within this category.

Subsequent to the examination, Mr. Ray obtained a copy of canceled check No. 1129.  It was made payable to "Jennie Ray", and had a notation of "Alimony".  In addition, Mr. Ray introduced a copy of canceled check No. 1126, dated May 2, 2002, made payable to "Harris County Child Support" in the amount of $2,000 (May child support) to prove that a separate child support payment was sent to the department in May of 2002.  At trial, Mr. Ray argued that check Nos. 1129 and 1126, when viewed together, showed that the entire $3,000 of check 1129 was alimony.

Mr. Ray contends that the May child support payment was the first time that he had sent his payment through the department. Mr. Ray explained that check No. 1114, the payment immediately preceding check No. 1129, bore a notation of "1000-child support 2000-alimony", because in April he did not know where the child support payments should be sent.  Checks thereafter did not specify a child support and alimony split, because all child support payments were sent through Harris County, and all alimony payments were sent directly to Ms. Bader.

Ms. Bader, on the other hand, does not remember whether the checks at issue were intended as child support or alimony, but she nevertheless contends that they were for child support.  Ms. Bader

presented a bank statement to show that she did not receive her first child support payment from the department, via direct deposit, until July 8, 2002. She therefore argues that check Nos. 1129 and 1148, both dated in May and whose sum is equal to an installment of a child support payment, were in actuality child support since she received nothing from the department until July.

Ms. Bader is essentially arguing that Mr. Ray failed to pay the May child support to the department. This argument, however, is not persuasive. According to Ms. Bader's own testimony, Mr. Ray had always been timely with his child support payments during their separation. In the one instance where he forgot to make his child support payment, he promptly paid upon her request. It is likely that the 2-month delay was attributable to processing and setting up the initial account for the child support payments. In light of Mr. Ray's payment history and the canceled check for the May child support payment, the Court concludes that Mr. Ray paid child support to the department for May of 2002.

In this case, both check Nos. 1129 and 1148 were made payable to "Jennie Ray" in May of 2002 and were dated after the check for May child support. It logically follows that these payments were alimony. For the Court to find otherwise, it would require an assumption that Mr. Ray made $4,000 of child support payments in May of 2002--$2,000 to the department and another $2,000 to Ms.

Bader.  This is not likely since Mr. Ray made it clear that he had no interest in making any payments to Ms. Bader unless it was in furtherance of the divorce.

Based on the evidence presented, the Court finds that the $2,000 attributable to check Nos. 1129 and 1148 is alimony. Accordingly, Mr. Ray paid a total of $18,000 of alimony between April 1 and August 1, 2002.

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decisions will be entered</u>

<u>under Rule 155</u>.