ANTHONY ALBERT MERCURIO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mercurio v. Commissioner
Docket No. 5051-94
United States Tax Court
T.C. Memo 1995-312; 1995 Tax Ct. Memo LEXIS 307; 70 T.C.M. (CCH) 59; July 17, 1995, Filed *307 Decision will be entered for respondent. Anthony Albert Mercurio, pro se. For respondent: Margaret S. Rigg. POWELL
POWELL
MEMORANDUM OPINION POWELL, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined a deficiency in petitioner's 1990 Federal income tax in the amount of $ 5,663 and an accuracy-related penalty pursuant to section 6662(a) in the amount of $ 1,133. Petitioner resided in South San Francisco, California, when he filed the petition. The issues are (1) whether payments made by petitioner to his former wife constitute alimony payments deductible from gross income, and (2) whether the understatement of income tax, if any, is attributable to negligence. The facts may be summarized as follows. Petitioner and his former spouse, Sheridan Lee Mercurio (Mrs. *308 Mercurio), married in 1980 and separated toward the end of 1988. Petitioner began making payments of approximately $ 1,000 each month to Mrs. Mercurio. They subsequently decided to dissolve their marriage and hired a mediator, Steven Neustadter, to help resolve their differences. In a memorandum dated January 25, 1990, Steven Neustadter noted that the parties had resolved most of their differences except for spousal support. In a memorandum dated April 9, 1990, he noted that the parties had orally agreed that "Through the end of 1992 * * * [petitioner] shall pay support in the amount of $ 1,300 per month plus 29 percent of the gross amount of any bonus * * * [petitioner receives]." A marital separation agreement was drafted in September of 1990 reflecting the parties' oral agreement of support (the draft agreement). It provided, in pertinent part: 2.2 ANTHONY [petitioner] hereby waives any and all right to receive spousal support or any other sum from SHERIDAN [Mrs. Mercurio] for his support, and realizes that by so waiving it now, he forever waives the right to spousal support. 2.3 As * * * for spousal support ANTHONY shall pay to SHERIDAN the sum of One Thousand Three *309 Hundred Dollars ($ 1,300.00) per month commencing on the first day of the month following the signing of this agreement and continuing thereafter in a like amount on the first day of each and every month except as otherwise provided herein. Commencing on January 1, 1993 monthly spousal support shall decrease to One Thousand Dollars ($ 1,000.00). Commencing on January 1, 1995 monthly spousal support shall decrease to Eight Hundred Dollars ($ 800.00).
The parties did not concur in the particulars of the draft agreement. Petitioner wanted the agreement to encompass all of the payments made during the year rather than from the execution of the document, and he did not wish to waive his right to support. Petitioner also objected to the length of time he would be obligated to make payments. The draft agreement was never executed. Subsequently the parties, through their attorneys, sought to have the divorce proceedings bifurcated, allowing for the termination of the marital status while they litigated the support issue. By letter dated November 13, 1990, to Mrs. Mercurio's attorney, petitioner's attorney proposed a stipulation stating that the payments petitioner had made to Mrs. Mercurio *310 in 1990 be deductible as support. Mrs. Mercurio's attorney responded by letter dated December 13, 1990: Mrs. Mercurio is willing to sign the stipulation, providing that we can reach an agreement as to all issues that remain to be resolved between them as a result of their divorce. * * * My client is willing to sign * * * [the draft agreement] and apparently your client is not. * * * In your letter to me of November 13, you related that it was your intent to get back to me within ten days of the date of your letter with a counter proposal to * * * [the draft agreement]. As of the date of this letter, I have still not received your counter proposal. Before I can advise my client to sign the stipulation re temporary support, I want to see what changes * * * [petitioner] wants made to * * * [the draft agreement] and then discuss such with my client. I am optomistic [sic] that we can reach an agreement as to changes to * * * [the draft agreement] and when we have reached an agreement as to such, then this [sic] Mrs. Mercurio will sign the stipulation. * * * Mrs. Mercurio is willing to sign a stipulation at this time as to temporary support for support payments received by her to *311 [sic] commencing December 1, 1990.
A Stipulation and Judgment of Dissolution of Marriage for Status Only was filed on December 13, 1990, with the San Mateo County Superior Court. No judgment has been entered concerning the support obligations of the parties. On his 1990 Federal income tax return, petitioner deducted $ 15,600 as alimony. Respondent disallowed the deduction and made adjustments in petitioner's itemized deductions to take into account the increase in adjusted gross income. [2]
Section 215 allows individuals to deduct alimony or separate maintenance payments, within the meaning of section 71(b), that are includable in the recipient's gross income pursuant to section 71. Payments are "alimony or separate maintenance payments' under section 71(b)(1) if: (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument, (B) *312 the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215, * * *, and (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.
The term "divorce or separation instrument" includes, as relevant here, "a written separation agreement". Sec. 71(b)(2)(B). The question, therefore, is whether petitioner made support payments pursuant to "a written separation agreement". This Court has held that a unilateral statement by an individual that he is willing to pay certain sums for support does not constitute a written separation agreement. ; . Further, even if there is an agreement between the parties, the agreement must be reduced to writing before payments are deductible. "Congress was interested in requiring a clear statement *313 of the separation agreement so it could be determined with certainty the amount of payments to be included in the wife's income and the allowable corresponding deduction available to the husband." . Despite the parties' treatment of the payments as support, they were in the process of negotiating the terms of their separation and divorce. There was no agreement, written or otherwise, designating the payments as separate maintenance payments deductible by petitioner. Although Mrs. Mercurio may have been willing to sign the stipulation, the fact remains that she did not. Respondent determined that petitioner was subject to an accuracy-related penalty for negligence pursuant to section 6662(a). Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. . The facts in this case indicate that petitioner understood the importance of a written agreement as a requirement for the alimony deduction. Correspondence between petitioner and Mrs. Mercurio, through their attorneys, *314 bears out the fact that the availability of the deduction for spousal support played a significant role in the divorce negotiations. Petitioner was well aware at the time he claimed the deduction that he was not entitled to it. Accordingly, respondent's determinations are sustained. Decision will be entered for respondent. Footnotes
1. Section references are to the Internal Revenue Code in effect for the year in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The parties stipulated that the portion of the deficiency attributable to itemized deductions will be sustained if we find for respondent.↩