T.C. Memo. 2013-143

UNITED STATES TAX COURT

JAMES J. FAYLOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18761-11.            Filed June 5, 2013.

<u>Dana C. Bradford III</u>, for petitioner.

<u>Dennis Richard Onnen</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>: Respondent determined a deficiency of $7,278 and an

accuracy-related penalty of $1,456 in petitioner's Federal income tax for 2008.

The issues for decision are: (1) whether petitioner is entitled to a deduction for

[*2] alimony paid greater than the amount respondent allowed; and (2) whether petitioner is liable for an accuracy-related penalty under section 6662(a).[1]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner was a resident of Nebraska at the time the petition was filed.

Petitioner and Mary Faylor separated in May 2007. On July 20, 2007, Ms. Faylor filed a motion for temporary support in the District Court of Douglas County, Nebraska (divorce court). Thereafter, Benjamin M. Belmont, Ms. Faylor's attorney, and Dana C. Bradford, petitioner's attorney, exchanged correspondence regarding the terms of a temporary support agreement, as described below.

On August 13, 2007, Mr. Belmont sent a letter to Mr. Bradford proposing that petitioner pay $6,000 per month in temporary support so that Ms. Faylor could maintain the household. On August 20, 2007, Mr. Bradford sent a letter in reply proposing that petitioner pay $4,000 per month and requesting that petitioner and

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All amounts have been rounded to the nearest dollar.

[*3] Ms. Faylor's daughter's tuition be paid from a separate trust account. On August 22, 2007, Mr. Bradford sent a letter to Mr. Belmont proposing temporary support of $5,000 per month and requesting that Mr. Belmont draft a proposed temporary support order.

On September 1, 2007, while the parties were still discussing the terms of a temporary support order, petitioner began making monthly transfers of $5,000 to a joint checking account he shared with Ms. Faylor. Petitioner made the transfers believing that Ms. Faylor would withdraw the money from the joint account.

On October 26, 2007, Mr. Belmont sent Mr. Bradford a proposed temporary support order setting the amount of temporary support at $5,000 per month. On October 30, 2007, Mr. Bradford sent Mr. Belmont a revised proposed temporary support order which added a paragraph specifying 11 monthly bills that Ms. Faylor would pay and a paragraph regarding their daughter's tuition. On November 28, 2007, Mr. Belmont sent Mr. Bradford a letter rejecting the revised proposed temporary support order. Mr. Belmont stated that it was unnecessary to include the 11 monthly bills that Ms. Faylor would pay because she would continue to pay the expenses set out in her financial affidavit and that it was unnecessary to include a paragraph regarding the daughter's tuition. On December 6, 2007, Mr. Bradford sent Mr. Belmont a letter stating that if the

[*4] financial affidavit covered certain expenses, he would recommend using that portion of Mr. Belmont's proposed temporary order. Mr. Bradford also stated that if Ms. Faylor agreed to include the paragraph regarding tuition, he thought they would have a deal.

Neither petitioner nor Ms. Faylor signed either of the two proposed temporary support orders. Even though there was no temporary support order in place, petitioner continued making the monthly $5,000 transfers into the joint account through April 2008.

On May 23, 2008, the divorce court entered a decree of dissolution of marriage (divorce decree) dissolving petitioner and Ms. Faylor's marriage. The divorce decree awarded alimony to Ms. Faylor of $2,500 a month for 6 months and then $1,500 a month for 66 months thereafter.

Petitioner timely filed a 2008 Form 1040, U.S. Individual Income Tax Return, in which he claimed a deduction of $36,500 for alimony paid. Of that amount, $16,500 represents payments petitioner made to Ms. Faylor pursuant to the divorce decree. The remaining $20,000, which respondent disallowed, represents the transfers to the joint account that petitioner made before the divorce decree.

[*5]                                   OPINION

I.      Alimony Payments

"Alimony or separate maintenance payments", as defined in section 71(b),

are includible in the gross income of the recipient and deductible by an individual

payor in the year paid.  See secs. 71(a), 215(a).  Section 71(b)(1) defines "alimony

or separate maintenance payment" as:

        any payment in cash if--

                (A) such payment is received by (or on behalf of) a
                spouse under a divorce or separation instrument,

                (B) the divorce or separation instrument does not
                designate such payment as a payment which is not
                includible in gross income under this section and not
                allowable as a deduction under section 215,

                (C) in the case of an individual legally separated
                from his spouse under a decree of divorce or of separate
                maintenance, the payee spouse and the payor spouse are
                not members of the same household at the time such
                payment is made, and

                (D) there is no liability to make any such payment
                for any period after the death of the payee spouse and
                there is no liability to make any payment (in cash or
                property) as a substitute for such payments after the
                death of the payee spouse.

        Respondent argues that petitioner is not entitled to deduct the $20,000 he

transferred to the joint account because:  (1) the transfers to the joint checking

[*6] account were not payments in cash; (2) the $20,000 was not paid under a divorce or separation instrument; and (3) petitioner has not satisfied section 71(b)(1)(B).  We focus our inquiry on whether Ms. Faylor received the $20,000 under a divorce or separation instrument.

Section 71(b)(2) defines the term "divorce or separation instrument" as:

(A) a decree of divorce or separate maintenance or a written instrument incident to such a decree,

(B) a written separation agreement, or

(C) a decree (not described in subparagraph (A)) requiring a spouse to make payments for the support or maintenance of the other spouse.

Petitioner concedes that the deposits he made to the joint account were not paid under a decree.  However, he argues that the letters between Mr. Bradford and Mr. Belmont constituted a "meeting of the minds", forming the basis of a written separation agreement between him and Ms. Faylor under section 71(b)(2)(B).

The term "written separation agreement" is not defined in the Code, the applicable regulations, or in the legislative history.  Jacklin v. Commissioner, 79 T.C. 340, 346 (1982); Keegan v. Commissioner, T.C. Memo. 1997-359.  A written separation agreement has been interpreted to require a clear statement in written form memorializing the terms of support between the parties.  See Jacklin v.

[*7] Commissioner, 79 T.C. at 350; Bogard v. Commissioner, 59 T.C. 97, 101 (1972). Letters which do not show a meeting of the minds between the parties cannot collectively constitute a written separation agreement. See Grant v. Commissioner, 84 T.C. 809, 822-823 (1985), aff'd without published opinion, 800 F.2d 260 (4th Cir. 1986); Estate of Hill v. Commissioner, 59 T.C. 846, 856-857 (1973); Ewell v. Commissioner, T.C. Memo. 1996-253; Mercurio v. Commissioner, T.C. Memo. 1995-312; Harlow v. Commissioner, T.C. Memo. 1984-393; Greenfield v. Commissioner, T.C. Memo. 1978-386.

In August 2007 Mr. Bradford and Mr. Belmont exchanged letters proposing differing temporary support amounts and terms. In October 2007 they exchanged drafts of proposed temporary support orders. However, they did not agree to each others' drafts, and neither petitioner nor Ms. Faylor signed either of the drafts.

The facts in this case are similar to those in Nemeth v. Commissioner, T.C. Memo. 1982-646. In Nemeth, after the taxpayer and his spouse separated, their divorce attorneys began negotiating the terms of a temporary support agreement. The taxpayer's attorney sent the spouse's attorney a letter stating that the taxpayer and his spouse had agreed to temporary support of $500 per month and proposing certain terms and conditions under which that amount might decrease. The spouse's attorney sent a letter in reply stating that those terms were not acceptable

[*8] and proposing a higher amount of temporary support.  We held that the correspondence between the attorneys did not establish the existence of a written separation agreement.

We find that the letters between Mr. Bradford and Mr. Belmont, like those exchanged by the divorce attorneys in Nemeth, do not establish the existence of a written separation agreement.  The letters show there was no meeting of the minds between petitioner and Ms. Faylor.  See Levanthal v. Commissioner, T.C. Memo. 2000-92.  Furthermore, Ms. Faylor and Mr. Belmont both credibly testified at trial that petitioner and Ms. Faylor did not come to an agreement.  Ms. Faylor credibly testified that she did not sign either of the proposed temporary support orders because she did not agree to all of the terms.  Mr. Belmont credibly testified that he had discussed with Mr. Bradford the amount and terms of the temporary support, but a complete agreement was not reached.

We find that Ms. Faylor did not receive the $20,000 under a divorce or separation instrument.  See sec. 71(b)(1)(A), (2).  Accordingly, petitioner is not entitled to deduct the $20,000 as alimony.[2]  See Hart v. Commissioner, T.C. Memo. 1997-11, aff'd without published opinion, 135 F.3d 764 (3d Cir. 1997).

---

[2] In the light of our holding, we need not address respondent's other arguments.

**[*9]** II.        Accuracy-Related Penalty

Respondent determined that petitioner is liable for a section 6662(a) accuracy-related penalty for 2008. Pursuant to section 6662(a) and (b)(2), a taxpayer may be liable for a penalty of 20% of the portion of an underpayment of tax attributable to a substantial understatement of income tax. An "understatement" is the difference between the amount of tax required to be shown on the return and the amount of tax actually shown on the return. Sec. 6662(d)(2)(A). A "substantial understatement" of income tax exists if the understatement exceeds the greater of (1) 10% of the tax required to be shown on the return for a taxable year or (2) $5,000. See sec. 6662(d)(1)(A). The burden of production is on respondent to produce evidence that it is appropriate to impose the relevant penalty. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

The notice of deficiency indicates that petitioner should have reported a tax of $61,141 on his 2008 tax return; petitioner reported $54,141. Petitioner understated his tax liability by $7,000, which exceeds both $5,000 and 10% of the tax required to be shown on his return. See sec. 6662(d)(1)(A). Therefore, respondent has met his burden of production.

**[\*10]** The accuracy-related penalty is not imposed with respect to any portion of the underpayment as to which the taxpayer shows that he or she acted with reasonable cause and in good faith. Sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 448. We find that petitioner had reasonable cause for the position taken on his return and acted in good faith. Petitioner mistakenly believed that he was entitled to deduct the $20,000 he transferred before the divorce decree as alimony. Although we ultimately disagreed with petitioner, it was reasonable for him to believe the money he transferred while negotiating a temporary support order was alimony. See sec. 1.6664-4(b), Income Tax Regs. (stating that a honest mistake of law may indicate reasonable cause and good faith).

     To reflect the foregoing,

> Decision will be entered for respondent with respect to the deficiency in income tax and for petitioner with respect to the accuracy-related penalty under section 6662(a).